J<small>UDGMENT</small> A<small>FFIRMED.</small>

M<small>INER</small> M<small>ILTON</small>, <small>PLAINTIFF IN ERROR</small>, v. T<small>HE</small> S<small>TATE</small> <small>OF</small> N<small>EBRASKA</small>, <small>DEFENDANT IN ERROR.</small>

1. **Criminal Law:** M<small>URDER.</small> At common law, on a charge of murder, malice is presumed from the fact of killing, unaccompanied with circumstances of extenuation; in such a case it devolves on the accused to disprove malice.

2. ———: ———: E<small>VIDENCE.</small> Under our statute to convict of murder in the first degree, the evidence must show that the party accused perpetrated the act purposely; that he did it with intent to kill; and of deliberate and premeditated malice.

3. ———: M<small>URDER IN SECOND DEGREE</small>: P<small>RESUMPTION.</small> Where a homicide is proved, the presumption is, that it is murder in the second degree.

4. ———: M<small>URDER IN FIRST DEGREE</small>: S<small>TATUTORY DEFINITION.</small> The words "deliberate and premeditated malice" in the statutory definition of murder in the first degree, were intended to restrict murder in that degree to cases where deliberation was shown to have taken place before the commission of the crime.

5. **Practice in Criminal Cases:** INSTRUCTIONS TO JURY. The charge of the court to the jury should be a clear and explicit statement of the law applicable to the facts in the case, and should cover all the questions involved in the issue.

THIS was an indictment for the murder of Henry King in Washington county on the 16th of May, 1876. The trial before SAVAGE, J., and a jury, resulted in the conviction of Milton of murder in the first degree, and sentence that he be executed on the 22d day of September following. He sued out this writ of error. The facts necessary to an understanding of the case appear in the opinion.

*Carrigan & Osborn,* for plaintiff in error.

To constitute murder in the first degree, the killing must be "purposely and of deliberate and premeditated malice, or in the perpetration of arson," &c. While we are aware that the courts have not permitted a liberal construction of the words deliberate and premeditation, yet all the cases recognize premeditation as an element essential to constitute the crime of murder in the first degree. *Whiteford v. Com.,* 6 Rand, 721. *Commonwealth v. Murray,* 2 Ashmead, 41. *Id. v. William,* 2 Id., 69. *People v. Sullivan,* 3 Seld., 369. *Anthony v. State,* 4 Meigs, 265.

While length of time between the formation of the design and its execution is immaterial, yet the design must be deliberate and premeditated. *Shoemaker v. State,* 12 Ohio, 43. In the statute of Indiana the adjective, deliberate, is omitted from the definition of murder; yet the court, in enumerating the elements necessary to make killing murder in the first degree, says: "There must be something more than an intention to kill;—the purpose must be premeditated." *Fahnestock v. State,* 23 Ind., 231. By premeditation is

meant previous deliberation, thinking and revolving in one's mind beforehand, exercising by previous thought or meditation. *People v. Sanchez*, 24 Cal., 71.

*George H. Roberts*, Attorney General, for the State.

MAXWELL, J.

The instructions of the court to the jury, while stating the law correctly so far as they apply, are restricted almost entirely to the definition of murder, and the effect of intoxication.

The only question for this court to consider is whether the evidence sustains the verdict of murder in the *first* degree.

Murder at common law is thus defined: "When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the Kings peace, with malice aforethought, either express or implied." 4 Blacks. Com., 194. When the fact of killing is shown, unaccompanied with circumstances of extenuation, the burden of disproving malice is thus stated: "We may take it for a general rule, that all homicide is malicious, and of course amounts to murder unless when *justified* by the command or provision of the law; excused on account of accident or self preservation; or alleviated into manslaughter, by being either the involuntary consequence of some act not strictly lawful, or (if voluntary) occasioned by some sudden and sufficiently violent provocation.  *  *  *  And all these circumstances of justification, excuse, or alleviation, it is incumbent upon the prisoner to make out to the satisfaction of the court and jury; the latter of whom are to decide whether the circumstances alleged are proved to have actually existed; the former, how far they extend to take away or mitigate guilt, for all homicide is pre-

sumed to be malicious until the contrary appeareth up-on evidence." 4 Blacks. Com., 201.

Our statute provides that: "If any person shall pur-posely, and of deliberate and premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or caus-ing the same to be done, kill another; or if any person, by willful or corrupt perjury, or by subornation of the same, shall purposely procure the conviction and execu-tion of any innocent person; every person so offending shall be deemed guilty of murder in the first degree, and upon conviction thereof, shall suffer death." Gen. Stat., 720. This section is copied from the laws of Ohio.

The supreme court of that state, in a circuit decision, in the case of the *State v. Turner,* Wrights Rep., 30, gave a construction to this section. The court instructed the jury that: "To convict of murder in the first degree you must, in addition to the points I have mentioned, be satisfied: 1. That the prisoner perpetrated the act purposely. 2. That he did it with intent to kill. 3. That he did it of *deliberate and premeditated* malice. The intention to do the injury must have been *deliberat-ed* upon, and the design to do it *formed,* before the act was done, though it is not required that either should have been for any considerable time before. This sup-poses the party, by reflection, understood what he was about to do, and intended to do it in order to do harm."

In *The State v. Gardiner,* Wright's Rep., 399, the court, in instructing the jury, say: "The *design* or *pur-pose to kill,* may be deduced from the attending circum-stances; the manner of inflicting the wounds; the kind of instrument with which they are inflicted, and its natural tendency to destroy life. It may be deduced also from the declarations of the prisoner made at the time, or before, or after the deed was done; but where reliance is placed on declarations, a jury should receive

them with great caution." See also *The State v. Thompson*, Wright's Rep., 623.

These cases are cited with approval in the case of *Shoemaker v. The State*, 12 Ohio, 54. *Fouts v. The State*, 8 Ohio State, 112. See also *Kaine v. The State*, 8 Ohio State, 306. *Leofner v. The State*, 10 Ohio State, 615.

In *Kaine v. The State*, 8 Ohio State, 311, Sutliffe, J., quotes the several statutes of that state, defining the crime of murder, from which it appears that the word "*purposely*" was not used in the statutory definition of murder until the year 1815.

In the case of *The State v. Turner*, Wright's Rep., 27, the court say: "Murder in the first degree is the *intentional, unlawful* killing by one reasonable being of another, in the peace of the state, of *deliberate, premeditated* malice. Murder in the second degree is the *intentional, malicious*, and unlawful killing by one reasonable being of another, in the peace of the state, *without deliberate* or *premeditated* malice." In Ohio and Virginia, it is said, that where a homicide is proved, the presumption is, that it is murder in the second degree. If the prosecutor would make it murder in the first degree, he must establish the characteristic of that crime. Wharton's Criminal Law, Sec. 1111. *The State v. Turner*, Wright's Rep., 28. *Hill's case*, 2 Gratt., 594. And that was the rule adopted by this court in *Prueit v. The State*, 5 Neb., 385.

In *The State v. Turner*, Wright, 28, the court say: "To establish premeditated malice, some affirmative evidence should be given by the prosecution. But the evidence as to this, as well as all other ingredients of crime, or other thing connected with human transactions may be either positive or circumstantial. Whichever is resorted to, however, should be of a nature to convince the understanding of the jury."

In the case at bar the proof fails to show that the purpose to do the injury had been *deliberated* upon by the prisoner before the perpetration of the act. It is true that one witness testifies that he heard him say in Blair, on the day on which the killing took place, "I am going to thump the old son of a bitch before this sun sets." And another witness testified, that in the month of July previous he had heard him say, "he would lay Mr. King out," whatever that may be. But it is apparent that these statements were not understood by those who heard them as threats to commit murder.

It appears that a lawsuit was pending between Jensen and the deceased, in regard to the land on which they both resided. The case was to have been tried at Blair on the day in question, but for some cause was continued. Christian and Milton appear to have been present as witnesses in the case. It is evident from Jensen's testimony in this case, that some animosity existed between him and the deceased on account of this lawsuit.

The Kings appear to have left Blair on their return home before the prisoner. Jensen, accompanied by Christian, left Blair after the Kings had gone, and overtook the prisoner some two or three miles from Blair, who thereupon got into Jensen's wagon. Jensen appears to have driven rapidly and soon overtook the Kings, who thereupon drove rapidly to one of the houses on the Conchman place, closely followed by Jensen.

Lena Michells, a witness, called on the part of the state, testified as follows:

Q. Which way were they coming? Which wagon was ahead?

A. I don't know; I guess Mr. King's.

Q. How fast did they drive?

A. Awful fast.

Q.   How fast was Milton driving?

A.   Just as fast as he could.

Q.   Who was in Jensen's wagon?

A.   There were three men in that wagon, and two in the Kings' wagon.

Q.   Which team did you say was ahead?

A.   Henry King's.

Q.   Where was he driving?

A.   To our place.

Q.   Where were they driving—could you tell?

A.   Yes, to our place.

Q.   Just go on and tell us about what they did, and how they came up there—who was ahead?

A.   The two wagons came up to the place; Miner Milton's wagon came first.   He came up through the wheat, and King's wagon drove up the other side of the road, and came up through the garden, and came up to the place Miner Milton stopped at.   He got some wood there and threw it to the Kings' wagon, and the Kings stopped too.   Henry King said, " What do you want? " and Miner Milton said, " I'll fix you."   Then the Kings got out of their wagon and came to the wood.

Q.   State what the Kings did when they got out of their wagon?

A.   Miner Milton got out of the wagon and took this long pole (pointing to the pole which had been previously introduced in evidence).

Q.   Did the Kings have any clubs?

A.   Yes.   Henry had a little club, but Miner Milton took it from him and threw it away, and hit Henry with the club.   My brother took it away; then he took the beetle (indicating the beetle which had previously been introduced in evidence).

Q.   What did Henry have in his hands then?

A.   Nothing.

Q.   Did Henry King try to strike Miner when he hit him with this beetle?

A.   I did not see him; Miner Milton struck him with this club; Henry went down and I run away.

Edward  King, brother of the deceased, who had resided with him nearly three years prior to his death, testified on the trial that he knew of no trouble between Milton and his brother.

So far as the testimony in this case discloses, the only deadly weapon which the prisoner had in his hands at the time of the assault was the beetle with which the fatal blow was given, and that was not taken up until after the pole had been taken away from him.  Had the testimony shown that he had made threats against the life of the deceased, or that he pursued or assaulted him with the intention of taking his life, it would have been sufficient to have sustained a verdict of murder in the first degree.

In many cases deliberate and premeditated malice may be deduced from the attending circumstances, when they are such as to indicate an intention to commit the crime.   Where a person has *actually formed* the purpose maliciously to kill another, and has deliberated and premeditated upon it before committing the offense, the length of time that intervenes *between* the time such purpose is *formed* and its *execution* is not material, as it is the formation of such purpose after deliberation and premeditation, and carrying the same into execution, that constitutes the crime of murder in the first degree.   The word " premeditated " means: " To think on, to revolve in the mind beforehand; to contrive and design previously."   Webster Dict., 1028.   The word deliberate means: " To weigh in the mind; to consider and examine the reasons for and against; to consider maturely; to reflect upon."   Id., 349.   Malice in criminal law is defined to be: " The doing a wrongful act intentionally without just cause or excuse."   2 Bouv. Law Dict., 91.   The words " deliberate and premeditated

malice " in our statutory definition of murder in the
first degree, evidently were designed to restrict murder
in that degree to cases where at least some degree of de-
liberation was shown to have taken place before the
commission of the crime.

Section one of the Pennsylvania act of April 22,
1794, defining the crime of murder in that state, and
from which the statute of Ohio probably was copied,
recites by way of preamble, that: " Whereas the several
offenses which are included under the general denomina-
tion of murder, differ so greatly from each other in the
degree of atrociousness, that it is unjust to involve them
all in the same punishment " (therefore, etc.) " all murder
which shall be perpetrated by means of poison, or by
lying in wait, or any other kind of willful, deliberate,
and premeditated killing, or which shall be committed
in the perpetration of, or *attempt to perpetrate* any
arson, rape, robbery, or burglary, shall be deemed mur-
der in the first degree, and all other kinds of murder
shall be deemed murder in the second degree." Whar-
ton's Crim. Law, 930.

The conduct of Jensen in the premises, while it forms
no excuse for the prisoner, is wholly inexcusable in pur-
suing after Henry King to the house on the Conchman
place. His statement that he was afraid of Milton, if he
refused, is not entitled to much weight under the cir-
cumstances, his nephew being with him in the wagon.
It is evident, too, that his nephew, if not himself, en-
couraged the assault. Had he been afraid of Milton, it
is not very probable that he would have waited for him
at the house until after the fatal blow was given, and
then permitted him to accompany him in the wagon.

The charge of the court to the jury should be a clear
and explicit statement of the law applicable to the facts
in the case, and should cover all the questions involved
in the issue. The instructions of the court in this case

are defective in that regard, and left the jury in doubt as to the law on questions presented by the testimony.

This court will not weigh testimony, and set aside a verdict, simply because we would not have reached the same conclusion as the jury; but where a verdict has been rendered without evidence to sustain it on a material point, or where the evidence is clearly insufficient, it is our duty to set it aside, and grant a new trial. In this case, the testimony fails to show *premeditation* and *deliberation* on the part of the prisoner, and on that account alone the judgment must be set aside. The former trial took place but a few days after the occurrence, and therefore the testimony in the case probably was not as fully presented as it can be on another trial.

The judgment of the district court is reversed, and the cause remanded for a trial *de novo*.

REVERSED AND REMANDED.