Simmerman v. State.

MATHIAS SIMMERMAN, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law:** MURDER: EVIDENCE. To justify a verdict of murder in the first degree, the evidence must show the killing to have been done not only *purposely*, but also with *deliberation* and *premeditation*.

2. **Statutory Construction.** The term "deliberation and premeditation," used in defining the different degrees of murder, requires the act of killing to have been "done with reflection," and "conceived beforehand." Evidence examined, and *Held*, Not sufficient to bring the case within this rule.

3. **Unlawful Attempt to Arrest.** A person may resist an unlawful attempt at arrest, and if necessary, rather than submit, he may lawfully kill the person making it.

ERROR to the district court for Kearney county. Tried below before GASLIN, J.

*L. C. Burr,* for plaintiff in error.

*Isaac Powers, Jr.,* for defendant in error.

LAKE, CH. J.

The most important objection made to the conviction of the prisoner, and the only one made in the motion for a new trial is, that the verdict is not supported by the evidence, and to this we shall chiefly direct our attention.

The conviction was of murder in the first degree, the punishment of which is death. To have justified such a verdict the evidence should have been sufficient to show that the act of killing was done not only " purposely " but also with "deliberate and premeditated malice." If the evidence fall short of this, if it were only sufficient to show, at most, the act to have been done "purposely and maliciously, but without deliberation and premeditation," the conviction should not have exceeded murder in the sec-

ond degree, the punishment for which is imprisonment in the penitentiary not less than ten years, or during life, in the discretion of the court. Criminal code, §§ 3, 4. *Milton v. The State*, 6 Neb., 136. *Schlencker v. Same*, 9 Id., 241.

That the killing was malicious, without qualification, is possibly reasonably inferable from the manner of doing it, together with the fact that the provocation may have been inconsiderable. Malice is presumed when no considerable provocation appears. *Preuit v. The People*, 5 Id., 377. But as to the other essentials of murder in the first degree we are, after a careful examination of the evidence, constrained to say that they were not proved.

In construing a statute the language employed in it should generally be given its plain obvious import. *Follmer v. Nuckolls County*, 6 Id., 204. 10 Am. Law Register, 537. 1 Broom & Hadley's Commentaries (Am. Ed.), 70. In view of this rule, what is to be understood by the term "deliberation and premeditation" in the statutory definition of the different degrees of homicide? According to Webster, deliberation means, "The act of deliberating, or of weighing and examining the reasons for and against a choice or measure; mature reflection." And premeditation: 1. "The act of meditating beforehand; previous deliberation. 2. Previous contrivance or design formed," etc. "Premeditation differs essentially from *will* * * * because it supposes, besides an actual will, a deliberation and continued persistence, which indicate more perversity." Bouvier. One eminent author says of the statutory rule of deliberation and premeditation, that it requires the act to have been "done with reflection" and "conceived beforehand." Wharton on Homicide, § 180*.

The authorities are conflicting as to the time that is requisite before the act of killing, for the exercise of these operations of the mind. All agree, however, that some

time for deliberate reflection is necessary. This being so, it seems to follow necessarily that, where, as was the case here, the killing is the result of a sudden affray between parties before entirely unknown to each other, following quickly its commencement, and the person killed, without cause, began or provoked it, it cannot be said there was time for such reflection as the law contemplates. If this be not a correct view of the force of the term " deliberation and premeditation," then there is really no substantial distinction between the two degrees of murder.

Speaking on this subject the supreme court of Kansas has said: " The word 'deliberate' means that the manner of the performance was determined upon after examination and reflection; that the consequences, chances, and means were weighed and carefully considered. It is not only necessary that the accused shall plan, contrive, and scheme as to the means and manner of the commission of the deed, but that he shall consider different means of accomplishing the act." *Craft v. The State*, 3 Kan., 450. The last clause of this quotation, perhaps, goes too far in holding that it is necessary for the accused to have considered " different means " for the accomplishment of his purpose to kill. In all else, however, we regard the view thus expressed as sound. See also *Ake v. The State*, 30 Texas, 466. *Anderson v. Same*, 31 Id., 440. *Milton v. The State*, 6 Neb., 136.

Referring to the evidence, we find that the crime of which the prisoner was convicted was committed on the 16th of October, 1882, at Minden, in Kearney county. The first account given of the prisoner is, that in company with two companions he came to Minden on the day before. One of these companions was Belmont, who was with him when the crime was committed, and participated in it.

On the evening of the 16th, the prisoner and Belmont went into the dining room of the "Prairie House," one of the Minden hotels, seated themselves at the table, and or-

dered their suppers.   Just as they had given their orders, a person who is called by the witnesses "Jack Woods," or "Sheriff Woods," entered the room, approaching them from the rear, presented a revolver at one of them, and told them to "throw up their hands" and consider themselves "under arrest."   Instead, however, of obeying this order the parties instantly engaged in what shortly proved to be a deadly struggle.   Either Belmont or the prisoner—as to which it was the witnesses disagree—seized Wood's revolver, or arm, jerked him partly around, while the other, or both together, instantly shot him to death.

But who was Jack Woods, or Sheriff Woods, as he is called interchangeably by the witnesses?   Where did he live?   Was he, as the title given him would imply, an officer of the law?   If so, in what place and what was the extent of his jurisdiction?   Did he have any warrant for making what really seems to have been an unauthorized assault upon peaceable men?   If so, what was it?   As to these questions there was no evidence at all before the jury. They may have known about these things, but there was no evidence before them.

The prisoner and his companion Belmont, who were they?   Whence did they come to Minden, and whither did they go after this fatal encounter?   Perhaps they were known residents of Kearney county; it may be they were not, but whencesoever they came, had they committed, or were they even suspected of having committed any offense, either in Kearney county or elsewhere?   Did they know or had they ever heard of this man Jack Woods before? As to all of these matters, and many more which must have been susceptible of proof, the record is as silent as the grave.   The object of the assault upon the prisoner by Woods is left entirely to conjecture.   He may have been a good, law abiding citizen, and acting in the line of official duty; if so, it is not shown that the prisoner knew it.   He may indeed have been a very bad man, and his motives in

making the assault bad, as the prisoner knew, or had reason to believe, consistently with the evidence submitted to the jury.

Even if Woods' object really were to arrest these parties, as it probably was, in the absence of all evidence on the subject, we are required to presume that it was unauthorized, and that they had the right to resist it.

On the subject of homicide in resisting an unlawful attempt to arrest, it is said in Wharton on Homicide, 2d ed., § 227, that, "Where A unlawfully attempts to arrest B, B is justified in resisting; and if A so presses B as to make it necessary for him to choose between submission and killing A, then the killing A is not even manslaughter," citing *State v. Oliver*, 2 Houston, 604.

Such being the state of the law, and such the evidence, or rather the want of evidence against the prisoner, we must hold that the verdict was unwarranted, and direct a new trial. There are some other questions discussed by counsel, but inasmuch as they were not raised in the motion for a new trial we will not now consider them.

REVERSED AND REMANDED.