HENRY BEERS, PLAINTIFF IN ERROR, v. THE STATE OF
NEBRASKA, DEFENDANT IN ERROR.

1. Criminal Law: MURDER. Under our statute, to convict of
   murder in the first degree, the evidence must show that the
   party accused perpetrated the act purposely; that he did it with
   intent to kill; and of deliberate and premeditated malice. *Mil-
   ton v. The State*, 6 Neb., 136.

2. ———: ———. The words, "deliberate and premeditated
   malice," in the statutory definition of murder in the first degree,
   were intended to restrict murder in that degree to cases where
   deliberation was shown to have taken place before the commis-
   sion of the crime. *Id.*

ERROR to the district court for Lancaster county. Tried
below before CHAPMAN, J.

*J. B. Strode* and *I. W. Lansing*, for plaintiff in error.

*William Leese, Attorney General*, for the state.

COBB, J.

The plaintiff in error was indicted for murder in the first degree, in the homicide of Johanna Augusta Seifert. He was tried in the district court of Lancaster county at the October, 1887, term, convicted of the crime of murder in the first degree, and sentenced to be executed.

The indictment alleges that the plaintiff in error committed the murder on the 25th day of September, 1887. On the 26th day of October, 1887, the indictment was filed. On the 28th day of the same month the plaintiff in error was arraigned, and entered his plea of not guilty, and at the same time asked the court to appoint counsel to conduct his defense. On the 3d day of November, the trial was set for the 17th day of November. On the 17th day of November—the day set for trial—the court, upon the proper showing of poverty, assigned J. B. Strode as counsel for the defense of plaintiff in error. On the same day plaintiff in error filed his motion for a continuance of said cause until the next term of said court, which motion was supported by affidavits. On the 18th day of November, the application was overruled, and the case set down for trial on the 23d day of November.

The defendant brings the cause to this court on error.

Among the errors assigned is that of the overruling by the court of defendant's motion for a continuance. This assignment cannot be considered, for the reason that none of the affidavits in support of the motion are preserved in the bill of exceptions, and the motion itself, which is a part of the record proper, does not even state the ground upon which it is made, but for such ground or cause refers to the affidavits filed in support thereof. There are many decisions of this court to the effect that affidavits used upon the trial of a cause, or upon the hearing of any motion, or upon any proceeding therein, being no part of the record, unless made so by bill of exceptions, will only

be considered by this court when preserved by bill of exceptions. See *Tessier v. Crowley,* 16 Neb., 369, and cases there cited..

But by far the most important error assigned, and the one upon which plaintiff in error mainly relies, is that arising upon the instructions given by the court to the jury.

Upon the trial the fact of the homicide was clearly proven, and neither as to the fact or any of the accompanying circumstances was there any conflicting evidence. The evidence on the part of the defense was evidently introduced for the purpose of proving the defendant's insanity at the time of the commission of the homicide, and no fact was proved which tended to justify or excuse the homicide unless possibly such evidence tended to prove insanity or unsoundness of mind on the part of the accused, and of that I express no opinion.

The court upon its own motion charged and instructed the jury as follows: "1. The defendant, Henry Beers, is charged in the indictment on which he is now tried with the crime of murder in the first degree, by shooting and killing one Johanna Augusta Seifert, in the county of Lancaster and state of Nebraska, on the 25th day of September, 1887.

"2. The provision of the statute defining murder in the first degree provides, among other things, as follows: 'If any person shall purposely and of deliberate and premeditated malice kill another, every person so offending shall suffer death.'

"3. The statute defines murder in the second degree as follows: 'If any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof shall be imprisoned in the penitentiary not less than ten years, or during life, in the discretion of the court.'

"4.   The statute defines manslaughter as follows:   'If any person shall unlawfully kill another, without malice, either upon a sudden quarrel or unintentionally, while the slayer is in the commission of some unlawful act, every such person shall be deemed guilty of manslaughter, and upon conviction thereof shall be imprisoned in the penitentiary not more than ten years nor less than one year.'

"5.   The court instructs the jury that, in a prosecution on an indictment for murder in the first degree, if the evidence fails to sustain such charge of murder in the first degree, the jury may, under such an indictment, if the evidence shall justify and warrant it, find the defendant guilty of murder in the second degree, or of manslaughter, as the case may be.

"6.   The jury are instructed that to constitute murder in the first degree, there must have been an unlawful killing done, purposely, and of deliberate and premeditated malice.   To do an act purposely is to do it designedly, intentionally, and with a will.   Deliberate means with a cool purpose, after having weighed and considered the mode and means by which such purpose shall be effected; and premeditated means that the purpose or design to kill must have been formed before the act is performed by which the death is produced; it means to think and revolve in the mind beforehand.   A design or purpose must be formed to kill willfully, that is with intention that the act done should have the effect of taking the life of a human being, and some space of time, however short, must intervene between the formation of the purpose or design to kill and its execution.

"7.   The jury are instructed that malice, in its legal sense, differs from the meaning which it bears in common speech. In common acceptation malice signifies ill-will, anger, hatred, or revenge towards a particular individual.   Such a condition of the mind would of course constitute malice in the eye of the law.   But such is not necessarily its legal

sense.   Malice in its legal sense denotes that condition of
one's mind which is manifested by his intentionally doing
a wrongful act without just cause or excuse.   It means any
willful or corrupt intention of the mind.

" 8.   The jury are instructed that deliberation and pre-
meditation are not elements in the crime of murder in the
second degree, but malice is an essential ingredient in such
crime.   To constitute murder in the second degree, there
must have been unlawful killing, done purposely and ma-
liciously, but without premeditation and deliberation.
When the fact of an unlawful killing has been established
without any explanatory circumstances, malice is presumed,
and it would be murder in the second degree; but, if the
evidence established the fact that the killing was unlawful,
and was done of deliberate and premeditated malice, then
the offense is murder in the first degree, if the evidence
also proves that the killing was intentionally, purposely,
and unlawfully done.

" 9.   The jury are instructed that malice is not an ele-
ment in the crime of manslaughter, and to constitute this
offense there must have been an unlawful killing done,
without malice, either upon a sudden quarrel, or uninten-
tionally, while the slayer is in the commission of some un-
lawful act.

" 10.   The court instructs the jury that there are three
degrees of criminal homicide, namely: murder in the first
degree, murder in the second degree, and manslaughter;
and if the jury believe from the evidence that the defend-
ant, Henry Beers, killed the said Johanna Augusta Seifert,
in determining the degree of homicide of which he is
guilty, the jury should consider all the circumstances of
the killing as shown by the evidence, the character of the
instrument used, and of the wound inflicted, the motive,
if any, that prompted the defendant, and all the attending
and surrounding circumstances shown by the evidence.

" 11.   The court instructs the jury that motive is the

force behind the will which prompts it to act. It may be love of gain, selfish desire, hatred, sudden heat of passion, or any of the various causes which move the will power.

"12. The jury are instructed that a defendant in a criminal prosecution, and that this defendant is presumed to be innocent until he is proven to be guilty, beyond a reasonable doubt, and before the defendant can be convicted the evidence must satisfy the jury beyond a reasonable doubt of the truth of each material allegation in the indictment. And if all the facts and circumstances relied on by the prosecution for a conviction are reconcilable with any reasonable hypothesis other than the guilt of the defendant, or if the evidence does not satisfy the minds of the jury of the guilt of the defendant beyond a reasonable doubt, then the defendant must be acquitted.

"13. In this case it is not disputed that Henry Beers shot and killed Johanna Augusta Seifert without any just cause or provocation. You are, therefore, instructed that the act of shooting being voluntary upon the part of the accused, unless it be shown by competent proof, and beyond a reasonable doubt, to have been done without deliberation and premeditation, it would be murder in the first degree. So where the killing is done without provocation the law implies malice. For no person, unless of an abandoned heart, would be guilty of such an act without cause or provocation, however slight. Therefore, the facts having been established without pretence or controversy, that the prisoner, Henry Beers, deliberately armed himself with a revolver loaded with powder and ball, with the purpose and intention of killing Johanna Augusta Seifert, and in pursuance of such purpose and intention fired the fatal shot which caused death, unless some legal excuse be shown for such unlawful and criminal act, the presumption is that the defendant intended the natural and probable result of his own acts.

"14.   The court further instructs the jury that in criminal law a person is always held to intend the natural and probable results of his own acts, unless the contrary is made to appear by the evidence; and if one with deliberation and premeditation uses a deadly weapon like a revolver, and shoots at another intentionally, and such other is wounded, and, in consequence thereof, dies, the person shooting is held responsible for the death, and if the killing is neither justifiable nor excusable in law he is liable to be punished for murder in the first degree.

"15.   You are further instructed that in order to justify the defendant in the commission of the crime charged, or rather to excuse him for such criminal act, you will have to find from the evidence, beyond a reasonable doubt, that the accused at the time of the killing of Johanna Augusta Seifert was laboring under monomania, attended by delusion to such an extent, and that his mind was in such a diseased state that the act of killing the said Johanna Augusta Seifert was an outburst or paroxysm of disease, which for the time being overwhelmed and superseded reason and judgment; so that the accused was not an accountable agent, and did not know that he was doing wrong and violating the law of the land, and if you so find that the accused at the time of the commission of the crime charged was not an accountable agent, and did not know he was doing wrong, your verdict should be not guilty.   On the other hand, as the evidence proves beyond all doubt the fact of the unlawful killing, without provocation, by the use of a deadly weapon, attended by circumstances of violence, unless some legal excuse is shown for such criminal act, your verdict should be guilty as charged in the indictment.

"16.   The character of the mental disease relied upon in this case to excuse the accused is what is known as partial insanity, consisting of melancholy, accompanied by delusion, under which the accused labored at the time of the

commission of the crime with which he is charged, caused by the refusal of the deceased, Johanna Augusta Seifert, to become his wife, perverted his mind, so that it brooded over the one idea, the imaginary wrong done him by the refusal to marry him on the part of the deceased, that such delusion overcame his reason so that he could not resist the impulse to kill and destroy the said Johanna Augusta Seifert.

"17.  The ordinary presumption is, that a person is of a sound mind until the contrary appears, and in order to shield one from criminal responsibility the presumption must be rebutted by the proof of insanity satisfactory to the jury, or from distinct evidence offered on the part of the accused, and in either case it should be sufficient to establish the fact of insanity, otherwise the presumption of sanity will prevail.

"18.  In order to constitute a crime a person must have intelligence and capacity enough to have a criminal intention and purpose; and if his reason and mental powers are either so deficient that he has no will, conscience, or controlling mental power, or if through the overwhelming violence of mental disease his intellectual power is for the time obliterated, he is not a responsible moral agent, and ought not to be punished for criminal acts; but on the other hand, if a person who has committed a criminal act possesses sufficient intelligence and mental capacity to have a criminal intention, and to distinguish between right and wrong at the time he committed such act, although his mind may be clouded and marked by disease, such person should be subject to the punishment provided by law as a penalty for his unlawful act.    A man is not to be excused from responsibility if he has capacity and reason sufficient to enable him to distinguish between right and wrong as to the particular act he is then doing.

"19.  The opinions of professional men on the question

of insanity are competent evidence to be considered by the jury, but the jury are instructed that the opinions of medical men of little experience on such questions are entitled to but slight consideration, and the value of such testimony will depend mainly upon the experience, fidelity, and impartiality of the witness who gives it; also you are instructed that it is competent to take into consideration the testimony of the acquaintances of the defendant who have testified as to the actions and conduct of the accused at the time of and prior to the commission of the act charged, and in this case it is from the testimony offered to establish or rebut insanity that the jury are to make up their minds as to whether Heinrich Beers was insane at the time he shot and killed Johanna Augusta Seifert.

"20.    You are further instructed that the benefit of every reasonable doubt is to the prisoner, and the state must make out a case beyond a reasonable doubt, or you should find the defendant not guilty.

"21.    The jury are instructed that a reasonable doubt, in the meaning of the law, is such a doubt as would cause a reasonably prudent and considerate man, in the graver and more important affairs of life, to pause and hesitate before acting upon the truth of the matters charged. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the judgment and understanding of ordinarily prudent men with a conviction on which they would act without hesitation in their own most important affairs of life.

"22.    The jury are instructed that if, after a careful, impartial consideration of all the evidence in the case, they can say and feel that they have an abiding conviction of the guilt of the defendant, and are fully satisfied to a moral certainty of the truth of the charge made against him, then the jury are satisfied beyond a reasonable doubt.

"23.    The jury are instructed that, in order to justify a conviction of the defendant, the evidence must satisfy

them that the murder charged in the indictment was committed in the county of Lancaster and state of Nebraska, and at or about the time alleged in the indictment, and that the defendant is guilty beyond a reasonable doubt."

I have quoted above the entire charge, but the objection of counsel is directed chiefly to the thirteenth and fifteenth instructions. At the hearing the attorney general appeared on the part of the state, and called the attention of the court to these instructions, and with commendable frankness declared his inability and unwillingness to defend the same, or to advise the court, in view of such erroneous statement of the law to the jury, that the conviction of the plaintiff in error could be sustained.

In the case of *Milton v. The State*, 6 Neb., 136, this court stated the law applicable to murder in the first degree. I quote from the syllabus : " Under our statute, to convict of murder in the first degree the evidence must show that the party accused perpetrated the act purposely ; that he did it with intent to kill ; and of deliberate and premeditated malice. * * * The words ' deliberate and premeditated malice,' in the statutory definition of murder in the first degree, were intended to restrict murder in that degree to cases where deliberation was shown to have taken place before the commission of the crime."

From this authority it is clear that the deliberate and premeditated malice with which the accused perpetrated the act of killing is matter of proof, without evidence of which there can be no conviction of murder in the first degree.

In the case at bar, by instruction thirteen above quoted, the jury are, in effect, told that the fact of the killing by shooting with a pistol being established by competent evidence, it devolved upon the accused to show some legal excuse for such unlawful and criminal act ; otherwise deliberation and premeditation would be presumed. The effect of this instruction was to shift the burden of proof

from the state to the accused, while it is the settled rule of law as we all understand it, that in this class of cases the burden of proof never shifts, but that every essential element and quality of the charge must be established by evidence beyond a reasonable doubt, or there can be no conviction of murder in the first degree.

If the learned court which delivered the charge intended to tell the jury that the evidence before them, of the accused having armed himself with a revolver loaded with powder and ball with the purpose of killing the deceased, and in pursuance of such purpose and intention fired the fatal shot which caused death, etc., was sufficient to prove deliberation and premeditation on the part of the accused, the charge was equally erroneous. While it is the province of the court to judge of the character, quality, and admissibility of evidence, its sufficiency to prove disputed facts on a trial before them is a question for the jury.

The other errors assigned will not be examined, as it is deemed best and most expedient to rest this opinion squarely upon the error in the giving of the thirteenth instruction, and the refusal of the trial court to grant a new trial for such error.

The judgment of the district court is reversed, and the cause remanded to that court for a new trial in accordance with law.

REVERSED AND REMANDED.

REESE, CH. J., concurs.

MAXWELL, J., dissenting.

I am unable to give my assent to the proposition that there is any evidence tending to show that the plaintiff was insane at the time he committed the homicide. The most that the evidence shows was certain personal peculiarities which were entirely consistent with a sound mind. Every

person possesses traits of character peculiar to himself, the outgrowth of his temperament, and the fact that one is morose, silent, sad, loquacious, merry, or morbid does not of itself prove or tend to prove the inability of the party to distinguish right from wrong, yet such proof is constantly resorted to for the purpose of convincing a willing jury that the person who in cold blood has taken the life of a fellow-being was not accountable therefor. Such a flimsy plea of insanity would be laughed out of court if presented as an excuse for forgery, burglary, or other like crimes, but when set up as a defense in a case of homicide —of deliberate murder, the highest crime known to the law—it is treated with respect and consideration, although both judge and jury have reason to believe it to be a sham. In addition to this, in proving the alleged peculiarities of the accused, a great deal of irrelevant matter is introduced before the jury, the tendency of which is to divert their minds from the main issue and obscure the offense charged. The jury, too, are frequently misled in regard to the proof introduced to prove insanity. Suppose that the proof consists largely, as in this case, of evidence that the accused had complained of headache at various times, and that he was frequently moody and silent, but without any proof of his inability to distinguish right from wrong, and the court should treat such evidence sufficient to shift the burden of proof of the prisoner's sanity upon the state, the jury might, and no doubt in many cases would, from that circumstance alone, relying on the superior knowledge of the judge, return a verdict of not guilty, upon the ground of insanity. To justify an acquittal on the ground of insanity, the testimony should show that the person committing the offense did not retain a degree of reason sufficient to discern the difference between moral good and evil. *Wright v. People,* 4 Neb., 409. *Hopps v. People,* 31 Ill., 385. *Freeman v. People,* 4 Denio, 28. The test as stated by this court in *Wright v. People, supra,* is the power to

40

discern the difference between moral good and evil at the time the offense was committed. No matter what personal peculiarities an individual may possess, if this power remains his liability continues, and this fact should not be lost sight of by juries.

For the poor unfortunate who has lost his reason, and while in this condition commits homicide, we have naught but pity, and no court or jury can be found which would convict in such a case; but the case is entirely different where a person, sane in every respect so far as can be observed, with premeditation and deliberation commits a murder. In such case the safety and well-being of society require that the murderer be punished, and the commission of crime thereby be discouraged. No pretense of insanity should be entertained, and unless the evidence tends to show the inability of the accused to distinguish right from wrong it should not be submitted to the jury.

It is probable that the judge, in his desire to give the accused a fair trial, permitted his attorney to introduce evidence showing certain peculiarities of character of the accused, and having admitted such evidence in accordance with the practice in this state, submitted it to the jury for what it was worth, although it is apparent that in his opinion the proof failed to establish insanity. There being no proof, therefore, tending to show that fact, the instructions relating to that subject could not have prejudiced the accused. It is apparent that the ends of justice would be subserved by empowering district judges to withdraw evidence from the jury, the sole purpose of which was to show insanity, where it fails in any degree to establish that fact.