ANDREW DEBNEY V. STATE OF NEBRASKA.

FILED OCTOBER 1, 1895. NO. 6807.

1. **Murder:** TIME COMMITTED. The crime of murder is regarded as having been committed at the time when the fatal blow or wound is inflicted, although the death occurs on a subsequent date, and the party is to be tried by the laws in force at the time the injurious act is done.

2. **Criminal Law:** ERRONEOUS INSTRUCTIONS: HARMLESS ERROR. It is not reversible error to give an erroneous instruction where it could not have prejudiced the complaining party.

3. **Homicide:** DELIBERATION. *Held*, That the eighth instruction defining the term "deliberation" was as favorable to the accused as he was entitled to have given.

4. **Criminal Law:** REVIEW OF INSTRUCTIONS. Instructions given to a jury should be construed together; and if, when so considered as a whole, they properly state the law, it is sufficient.

5. ———: INTOXICATION. *Held*, That the twenty-fourth paragraph of the charge to the jury, upon the subject of intoxication, is applicable to the evidence adduced on the trial.

6. **Murder:** CONVICTION: SUFFICIENCY OF EVIDENCE. Evidence *held* to sustain a conviction for murder in the first degree.

7. **Criminal Law:** ADDRESS OF COUNSEL: APPLAUSE BY BY-STANDERS. When the county attorney finished his closing address to the jury some of the by-standers, without the knowledge or connivance of any one connected with the prosecution, applauded, which was quickly suppressed by the presiding

judge, and who administered a rebuke to the persons making the applause.    *Held*, That the record failed to disclose that the defendant was prejudiced by the demonstration.

ERROR to the district court for Nance county. Tried below before SULLIVAN, J.

The facts are stated in the opinion.

*Reid & Morgan, M. V. Moudy,* and *Albert & Reeder,* for plaintiff in error:

The accused was entitled to the benefit of the provision of the act passed in 1893, fixing the punishment for murder in the first degree at death or imprisonment for life, at the discretion of the jury. (State Constitution, sec. 24, art. 3; 15 Am. & Eng. Ency. Law, 712; *Brown v. Williams,* 34 Neb., 376; Bishop, Written Law, sec. 110a.)

Murder cannot be committed until the injured person dies. (1 Wharton, Criminal Law [8th ed.], sec. 538; Criminal Code, sec. 254; *Heldt v. State,* 20 Neb., 493; 4 Am. & Eng. Ency. Law, 723.)

The twelfth paragraph of the charge to the jury is erroneous. (*Heldt v. State,* 20 Neb., 493; *Long v. State,* 23 Neb., 33.)

The eighth instruction of the court defining the word "deliberation" is erroneous. (*Simmerman v. State,* 14 Neb., 570; *Milton v. State,* 6 Neb., 136; *Craft v. State,* 3 Kan., 450.)

- The twenty-fourth paragraph of the charge in reference to intoxication is erroneous. (*Smith v. State,* 4 Neb., 277; *Ballard v. State,* 19 Neb., 609; *Clark v. State,* 32 Neb., 246; *Union P. R. Co. v. Ogilvy,* 18 Neb., 639; *Walrath v. State,* 8 Neb., 90; *City of Crete v. Childs,* 11 Neb., 252; *Dunbier v. Day,* 12 Neb., 596; *Bowie v. Spaids,* 26 Neb., 635; *Farmers Loan & Trust Co. v. Montgomery,* 30 Neb., 33; *Bain v. Wilson,* 10 O. St., 17; *Union Central Life Ins. Co. v. Cheeber,* 36 O. St., 210.)

The applause after the county attorney's closing argument prevented a fair and impartial trial. (*Carr v. State*, 23 Neb., 749.)

*A. S. Churchill, Attorney General,* for the state.

NORVAL, C. J.

An information was filed by the county attorney in the district court of Nance county, charging the plaintiff in error, Andrew Debney, with murder in the first degree. The prisoner was found guilty as charged, and was by the court sentenced to be hanged, which judgment he seeks to reverse by this proceeding.

It appears from the record before us that the plaintiff in error and his wife, Catherine Debney, being unable to live happily together, a separation took place. Subsequently, a reconciliation was brought about, and, after a time, a second separation occurred. Afterwards, on the 4th day of July, 1893, the accused went to the place where his wife was staying in Nance county and asked her if she would go home with him, and she replied she would not. He then inquired if she never intended to go with him, and upon receiving a negative answer he drew his revolver and shot at his wife five times, three of the balls penetrating her body. After she fell to the ground he jumped upon her and stamped her head and breast. From the wounds thus inflicted Mrs. Debney died in Platte county on the 9th day of the same month. The verdict of the jury found the prisoner guilty of murder in the first degree, but did not fix the penalty.

The first question argued by counsel is whether the accused was entitled to the benefit of the amendment to section 3 of the Criminal Code adopted by the legislature of 1893, fixing the punishment for murder in the first degree at death or imprisonment in the penitentiary for life, in the discretion of the jury. The act of the legislature contain-

ing the aforesaid amendment to the Criminal Code contained no emergency clause; therefore, under the provisions of section 24, article 3, of the state constitution, it did not become operative until three calendar months after the adjournment of the session of the legislature at which it was enacted. The twenty-third legislative assembly finally adjourned on the 8th day of April, 1893, and it is contended by counsel for plaintiff in error that the act, to which reference is made above, went into effect at the expiration of three calendar months from such adjournment, or on July 9, 1893, the day on which the death of Mrs. Debney occurred. On the other hand, the attorney general argues that the amendment did not go into effect until August 1, 1893. In other words, that the "three calendar months" begins to run at the expiration of the month within which the legislature adjourned *sine die*. In our view it is unnecessary, indeed it would be quite out of place, to decide at this time between these conflicting positions of counsel, or to review their arguments or the authorities cited in support thereof, since the time when the amendment of 1893 to section 3 of the Criminal Code went into force does not on the record arise in this case, unless the crime with which the plaintiff in error is called upon to answer was committed on July 9, the day Mrs. Debney died, and not on the 4th day of the same month, when the fatal wounds were inflicted. Undoubtedly the concurrence of both the wounds and the consequent death were necessary for the consummation of the crime of murder, for until death ensues the crime is not complete. The question has been frequently before the courts for adjudication, where is the crime committed when the wounds or blows and the death resulting therefrom occur in different counties or states? The great weight of the decisions hold that, independent of any statutory provision upon the subject, the crime is committed, and is punishable in the jurisdiction, where the fatal wound or blow is given. In other words,

that it is not the place of the death, but the place where the
criminal act is perpetrated to which the jurisdiction to try
and punish is given.   It was the inflicting of the fatal wounds
by the prisoner, coupled with the requisite contemporaneous
intent or design, which constituted the felony, the subse-
quent death of Mrs. Debney being a result or consequence
rather than a constituent element of the offense.   The doc-
trine is stated thus by Mr. Bishop, section 51, volume 1, of
his work on Criminal Procedure: "The true view appears
to be that the blow is murder or not, according as it pro-
duces death within a year and a day or not; and, therefore,
in all cases an indictment lies in the county where the blow
was given."   To the same effect see 1 Wharton, Criminal
Law, 292; Kerr, Homicide, sec. 226; *Rex v. Hargrave*, 5
Car. & P. [Eng.], 170; *Green v. State*, 66 Ala., 40; *State
McCoy*, 8 Rob. [La.], 545.

In *Riley v. State*, 28 Tenn., 645, it was held that the
venue is proved in a murder case by establishing that the
mortal blow was inflicted in the county in which the prose-
cution is brought, without proving the county where the
deceased died.   Green, J., in delivering the opinion of the
court, says: "For although at common law it was said the
offense was not complete until the death, yet it would be
doing violence to language to say that the offense was com-
mitted in the county where the death happened, although
the strokes were given in another county.   *  *  *   *   East
says the common opinion was that he might be indicted
where the stroke was given.   That alone is the act of the
party.   He commits this act and the death is only a con-
sequence."

*United States v. Guiteau*, 1 Mackey [D. C.], 498, was a
prosecution for the murder of President Garfield.   In that
case the fatal shot was fired in Washington, in the District.
of Columbia, from which the president died three months
later at Elberon, in the state of New Jersey.   Guiteau was
indicted and tried for the crime in the District of Colum-

bia.   The point was made in the case that the court had no jurisdiction, on the ground that the crime was committed at the place where the death occurred.   The court, in an opinion by Justice James, held that the murder was committed within the District of Columbia, since the fatal wound was given there, although the consequent death happened without the district and in one of the states.

*State v. Kelly,* 76 Me., 331, was a prosecution for murder.   The wound which produced the death was inflicted within the limits of Fort Papham, a fort of the United States, from the effects of which wound death ensued at Phippsburg outside the limits of the fort.   It was held the crime was committed where the mortal blow was given, and not where the person died.   The court, in the opinion, observe: "But it is said that, although a mortal wound may be inflicted within a fort, still, if the person wounded dies elsewhere, the crime must not be regarded as having been committed in the fort, but at the place where the person dies, and that in such a case the courts of the latter place have jurisdiction.   It is undoubtedly true that the courts of the latter place do sometimes have jurisdiction; but we are satisfied that when this is so, it is not because the crime is regarded as having been committed there, but because some rule of law, statutory or otherwise, expressly confers such jurisdiction.   The modern and more rational view is that the crime is committed where the unlawful act is done, and that the subsequent death, while it may be sufficient to confer jurisdiction, cannot change the locality of the crime."

*State v. Carter,* 3 Dutch. [N. J.], 499, was an indictment for murder.   The blows were struck in Hudson county, New York, from which the injured party died in New Jersey, where the prosecution was brought.   Vredenburgh, J., in speaking for the court upon the question of jurisdiction, uses this language: "The only fact connected with the offense alleged to have taken place within

our jurisdiction is that after the injury the deceased came into, and died in, this state.   This is not the case where a man stands on the New York side of the line and shooting across the border kills one in New Jersey.   When that is so, the blow is in fact struck in New Jersey.   It is the defendant's act in this state.   The passage of the ball, after it crosses the boundary, and its actual striking, is the continuous act of the defendant.   In all cases the criminal act is the impinging of the weapon, whatever it may be, on the person of the party injured, and that must necessarily be where the impingement happens.   And whether the sword, the ball, or any other missile, passes over a boundary in the act of striking, is a matter of no consequence.   The act is where it strikes, as much where the party who strikes stands out of the state as where he stands in it. ` Here no act is done in this state by the defendant.   He sent no missile, or letter, or message, that operated as an act within this state. The coming of the party injured into this state afterwards was his own voluntary act, and in no way the act of the defendant.   If the defendant is liable here at all, it must be solely because the deceased came and died here after he was injured.   Can that, in the nature of things, make the defendant guilty of murder or manslaughter here?   If it can, then, for a year after an injury is inflicted, murder, as to its jurisdiction, is ambulatory at the option of the party injured, and becomes punishable, as such, wherever he may see fit to die.   It may be manslaughter in its various degrees in one place, murder in its various degrees in another. Its punishment may be fine in one country, imprisonment, whipping, beheading, strangling, quartering, hanging, or torture in another, and all for no act done by the defendant in any of these jurisdictions, but only because the party injured found it convenient to travel."

In the case of *State v. Bowen*, 16 Kan., 475, Brewer, J., after reviewing the authorities bearing upon the question, says: "It seems to us, without pursuing the authori-

ties further, reasonable to hold that as the only act which the defendant does toward causing the death is in the giving the fatal blow, the place where he does that is the place where he commits the crime, and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime; at least that those movements do not, unless under express warrant of the statute, change the place of offense; and that while it may be true that the crime is not completed until death, yet that the death simply determines the character of the crime committed in giving the blow, and refers back to and qualifies that act."

In *State v. Gessert*, 21 Minn., 369, it appeared that the defendant was indicted for murder in Washington county, in that state, by feloniously stabbing and wounding one Savazyo, in said county, from which he died in the county of Pierce, in the state of Wisconsin. The indictment was demurred to on the ground that it did not charge the commission of an offense in Washington county. The court sustained the indictment. Berry, J., in passing upon the question of jurisdiction, said: "It is for his acts that defendant is responsible. They constitute his offense. The place where they are committed must be the place where his offense is committed, and, therefore, the place where he should be indicted and tried. In this instance, the acts with which defendant is charged, to-wit, the stabbing and wounding, were committed in Washington county. The death which ensued in Pierce county, though it went to characterize the acts committed in Washington county, was not an act of defendant committed in Wisconsin, but the consequence of his acts committed in Washington county."

If the crime was deemed committed in the county where the fatal wounds were given, as the authorities hold, it follows that the offense was committed when such wounds were inflicted. True, the death occurred at a subsequent date, but it relates back to the time the mortal injury

was received. The accused committed all the acts consti-
tuting the offense on July 4. The death which ensued in
Platte county on July 9 merely characterized his acts. The
crime of murder consists in intentionally and unlawfully
causing the death, and while it is true that the crime is
not complete until death occurs, yet it is incorrect to say
that the death is an element in the crime. It is merely
a necessary condition to it. The elements of the crime are
the acts of the perpetrator, such as the malice, intent, and
the wound or blow. The crime was committed when the
mortal wounds were inflicted, and he is to be tried by the
laws then in force. A case precisely in point is *People v.
Gill*, 6 Cal., 637. The defendant was indicted for the
crime of murder. After the blow, but prior to the death of
the victim, a change in the statute was made by the legis-
lature. A conviction was had under the amended law, and
upon a review of the case the supreme court held the crime
to be of the date of the blow and governed by the law
then in force. The chief justice, in the course of his opin-
ion, observed: "The blow was given before, but the death
ensued after, the passage of the last statute. The death
must be made to relate back to the unlawful act which oc-
casioned it, and as the party died in consequence of wounds
received on a particular day, the day on which the act was
committed, and not the one on which the result of the act
was determined, is the day on which the murder is prop-
erly to be charged."

Complaint is made of the giving of the twelfth instruc-
tion, which reads as follows:

"12. You would in this case be warranted in convicting
the defendant of murder in the first degree, and it would·
be your duty to do so, if you find the following facts from
the evidence and beyond a reasonable doubt: First—That
Catherine Debney is dead, and that she died in the county
of Platte and state of Nebraska on the 9th day of July,
A. D. 1893, or at some time prior to the 21st day of No-

vember, 1893, which is the date of filing the information in this case. Second—That said Catherine Debney died from the effects of wounds and injuries inflicted on her by the defendant in the manner and by the means specified in the information. Third—That the defendant inflicted said wounds and injuries upon the said Catherine Debney unlawfully and with the purpose and intent to thereby kill her; and that the said wounds and injuries were so inflicted by the defendant of his deliberate and premeditated malice. Fourth—that the said wounds and injuries were so inflicted by the defendant upon the said Catherine Debney in the county of Nance and state of Nebraska on the 4th day of July, A. D. 1893, or at some time prior to her death."

The criticism, and the only one, suggested upon the foregoing instruction,—that it assumes the death occurred within a year and a day from the time the mortal blow was inflicted,—is without merit. It is firmly settled by our own decisions that the court has no right in its instructions to assume that any essential element of a crime has been established. It is for the jury alone to pass upon the facts and the credibility of the witnesses. (*Heldt v. State*, 20 Neb., 492; *Long v. State*, 23 Neb., 33.) But the rule stated above has not been violated or infringed by the instruction already quoted. It does not assume that the death occurred within a year and a day after the injury was received, but it was left for the jury to determine from the evidence whether or not, beyond a reasonable doubt, Mrs. Debney died after the wounds were given, and before the filing of the indictment.

Exception was taken to the eighth paragraph of the court's charge, as follows:

"8. 'Deliberation' means the act of deliberating or weighing and considering the reasons for and against a choice or measure. In the sense which the word is here used, an act is done deliberately, or with deliberation, when

it is done in cool blood and not under the influence of violent passion, suddenly aroused by some real or supposed grievance. A person who does an act, not in the heat of sudden passion, but after having coolly weighed or considered the mode and means of its accomplishment, does it deliberately."

The foregoing definition of "deliberation" is substantially within the rule announced in *Craft v. State*, 3 Kan., 450. It is true this court in *Simmerman v. State*, 14 Neb., 570, criticised the definition given in the Kansas case in so far as it held it was necessary for the accused to have considered the different means for the accomplishment of the killing, and in the case at bar the instruction informed the jury that the weighing of the mode and means of the accomplishment of the act was essential to deliberation. Whether this was correct or not it is unnecessary to determine, for if it was erroneous, it was more favorable to the accused than he was entitled. Error cannot be predicated upon the giving of an instruction where it could not have prejudiced the complaining party. (*Converse v. Meyer*, 14 Neb., 190; *O'Hara v. Wells*, 14 Neb., 403; *Labaree v. Klosterman*, 33 Neb., 150; *Roggenkamp v. Hargreaves*, 39 Neb., 544; *Hurlbut v. Hall*, 39 Neb., 890; *Jolly v. State*, 43 Neb., 857.)

The twenty-fourth instruction given by the court on its own motion reads thus:

" 24. While it is a general rule of law that voluntary intoxication is no excuse for the commission of crime, still, in cases of this kind, drunkenness, if proved, may be considered by the jury for the purpose of determining whether the accused at the time of the alleged killing was capable of forming a willful, deliberate and premeditated purpose to take life; and if in this case, although you believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased in manner and form as charged in the information, still, if you further believe from the evi-

dence that at the time he inflicted the fatal injuries he was so deeply intoxicated as to be incapable of forming in his mind a design, deliberately and premeditatedly, to do the killing, then such killing would only be murder in the second degree. If, however, the defendant took intoxicants to steady his nerves for the commission of the crime with which he is charged, then his intoxication would neither excuse the crime, nor reduce it from murder in the first degree to the second degree."

The criticism directed against the foregoing is twofold: First, that it imposes the burden of proving intoxication upon the defendant; and second, that the last clause of the instruction is not based upon the evidence.   As to the first objection, we remark that counsel for the prisoner are correct when they say that the law does not cast the burden of proving intoxication upon the defense, but that it was sufficient if the jury from the evidence entertained a reasonable doubt upon that point.   It must be borne in mind that intoxication is not a justification or an excuse for crime, but evidence of intoxication is admissible in some cases for the purpose of showing no crime has been committed, or to show the degree or grade of the offense, where the crime charged—e. g., murder—consists of different degrees.   In a prosecution for murder it is competent for the jury to consider evidence of intoxication as tending to show that the act was not premeditated, and that there was not such deliberation as was necessary to constitute murder in the first degree. (*Smith v. State*, 4 Neb., 278.)   By at least four instructions the jury were informed that the accused should be acquitted, unless from the evidence they found that every element of the crime was established beyond a reasonable doubt.   The fifteenth paragraph of the charge is in this language:

"15. By the law of the land, every person is presumed to be innocent of crime, and the defendant in this case is entitled to the benefit of this presumption as evidence in

his favor, and in order to convict him of the crime alleged
in the information, every fact necessary to constitute such
crime must be established by the evidence beyond a rea-
sonable doubt.   If, after a full and fair consideration of all
the evidence in the case, you entertain any reasonable doubt
upon any single fact or element necessary to constitute the
crime of murder in the first degree, it is your duty to give
him the benefit of such doubt and acquit him of that crime;
and if upon a like consideration of the evidence you en-
tertain a reasonable doubt as to the existence of any single
fact or element necessary to constitute the crime of murder
in the second degree, you should give him the benefit of such
doubt, and also acquit him of that charge.   You should
likewise acquit him of the charge of manslaughter, if upon
a full and fair consideration of the evidence you entertain
a reasonable doubt of the existence of any fact necessary to
constitute that offense."

   The foregoing was a full and clear statement of the law
upon the question, and put, and properly, the burden upon
the state to make out its case, at every point, beyond a rea-
sonable doubt, although it would have been more appropriate
to have used the word "degree" instead of "crime."   To
convict of murder in the first degree it was necessary that
the act be done with deliberation and premeditation, and if
the evidence left any reasonable doubt upon the minds of
the jury as to whether there was any deliberation or pre-
meditation, they knew from the charge that they could not
convict him of the highest degree of murder, and they knew,
too, that it was not incumbent upon the accused to prove
his intoxication at the time the mortal wounds were given,
since they were told that the state was required to establish
every fact or element necessary to constitute the crime by
the evidence beyond a reasonable doubt.   This is not a case
of conflicting instructions, nor does the instruction criticised
undertake to impose the burden of showing intoxication
upon the defendant, but the rule upon that point was cov-

ered by the general instructions upon the burden of proof. The doctrine is well settled that instructions must be construed together, and if, when so considered, the law is properly stated, it is sufficient. (*St. Louis v. State*, 8 Neb., 406; *Murphy v. State*, 15 Neb., 383; *City of Lincoln v. Smith*, 28 Neb., 762.) There was sufficient evidence before the jury upon which to base the latter portion of the twenty-fourth instruction. The evidence discloses that the defendant often drank liquors to excess; that when under the influence of intoxicants, he is cross and rough; that after he first saw his wife on the morning of the tragedy and before its occurrence, he drank liquors. The defendant testified that on the day of the shooting he took the priest to Genoa. "I was drinking outside. It was carried out in pails. I got twenty-five cents worth of beer and twenty-five cents worth of rum." The inference could properly be drawn from the testimony that defendant drank "intoxicants to steady his nerves for the commission of the crime." The instruction was applicable to the evidence.

It is also urged that the evidence is insufficient to sustain the verdict. The evidence is uncontradicted that the defendant purchased a revolver a short time before the homicide, and that he inflicted the wounds from which his wife died. The accused relies upon the defense of insanity. After a second reading of the record we are fully satisfied that the defendant at the time fully comprehended what he was doing; that his mind was clear, and that with deliberation and premeditation he committed one of the most atrocious murders that has come under our observation. The evidence bearing upon the defense of insanity was fairly submitted to the jury under proper instructions, and the verdict has settled that point against the defendant. The assignment that the verdict is unsupported by the evidence must be overruled.

Finally, it is insisted that the defendant did not have a fair and impartial trial on account of alleged misconduct

of the audience in attendance upon the trial. It appears that at the close of the argument of the county attorney to the jury the spectators applauded by stamping of feet and clapping of hands, which applause was immediately suppressed by the presiding judge, who rebuked the persons for making the same. It was also shown that the applause was without the knowledge or connivance of those connected with the prosecution. The record fails to disclose what was said by the prosecutor in his closing address, nor does it appear from the showing made that the applause was in approval of the sentiments expressed by the county attorney. The incident complained of occurred in the presence and hearing of the trial judge, and he is better enabled than we to determine the effect, if any, the applause had upon the jury. By overruling the motion for a new trial, containing an assignment relating thereto, submitted upon the affidavits both on behalf of the accused and the state, the trial court must have been of the opinion that the demonstration was not of such a character as to influence the verdict, and no prejudice being shown, its determination will not be interfered with. (*Edney v. Baum*, 44 Neb., 294; *State v. Dusenberry*, 20 S. W. Rep. [Mo.], 461.) The accused has been accorded a fair trial, and no prejudicial error appearing in the record, the judgment is

AFFIRMED.

January 10, 1896, fixed for the execution of the sentence imposed by the trial court.