WILLIAM H. MARTIN, PLAINTIFF IN ERROR, v. WILLIAM T. SCOTT AND FRANK K. ATKINS, ADMINISTRATORS OF THE ESTATE OF WILLIAM MCWHIRTER, DECEASED, DEFENDANTS IN ERROR.

1. Evidence: BOOK ACCOUNT. Plaintiff offered himself as a witness to prove his "book of account" and was properly rejected. He then introduced his wife, who was sworn and testified as to the identity of the book of account of her husband, the plaintiff, that the charges were in his handwriting, made by him at or near the date of the services charged for, etc. Whereupon the book was offered in evidence to the jury and excluded. *Held*, error.

2. ——— : ———. The defendants offered in evidence the note register or book of bills receivable of the decedent's bank to prove that sometime pending the making of the account sued on the decedent had in his bank the note of plaintiff for $107.23 secured by chattel mortgage, which was admitted as evidence to the jury. *Held*, error.

ERROR to the district court for York county. Plaintiff filed a claim for medical services, etc., in the county court, against the estate of McWhirter, amounting to $459.00. The county court having allowed $35.00, Martin appealed, and on trial in the district court, before POST, J., and a jury, obtained a verdict and judgment for the same sum only, and thereupon brought the cause here for a review on a petition in error.

*France & Sedgwick*, for plaintiff in error.

Plaintiff was a competent witness. *Anthony v. Stinson*, 4 Kan., 220. Book of account was admissible. Civil code, sec. 346. 1 Greenleaf Ev., sec. 20.

*William T. Scott & W. W. Giffen*, for defendants in error.

Plaintiff could not testify in his own behalf. Laws 1877, p. 13, [Comp. Stat., 575]. Kansas statute, on which decision in 4 Kan., cited by plaintiff was based, is different from ours. Kansas Code, sec. 322. *Kisling v. Shaw*, 33 Cal., 446. Book account of plaintiff was properly excluded. Testimony of Mrs. Martin showed that she did not know *of her own knowledge* either that the book was one of original entries, or that the charges were made at or near the time of the transactions therein entered. Gen. Stat., 584. On cross-examination she testified that she came to Nebraska in February, 1878. The date of the first item on the account sought to be proved by the book, is October 9th, 1876. Even if the book should have been admitted, when this fact appeared on cross-examination, it would have been the duty of the court, on request, to have withdrawn it. If its exclusion was error at all, it was error without prejudice. *Dillon v. Russell*, 5 Neb., 484.

COBB, J.

The plaintiff offered himself as a witness to prove his book of accounts for the purpose of introducing it in evidence, which offer was refused. He then introduced Mrs. W. H. Martin, his wife, as a witness, who testified, among other things, as follows:

Q. State whether you knew William McWhirter in his life-time?

A. Yes.

Q. Did you know his condition, as to health?

A. Yes.

Q. You may state how that was, whether he was a healthy man or not?

A.   He was very delicate, I know.

Q.   You may state whether you know what the business of your husband is?

A.   Yes, sir.   He is a physician.

Q.   Now you may state, whether or not you know of his treating Mr. McWhirter in his life-time?

A.   Yes, sir.

Q.   You may state, about how long you know of his treating him?

A.   I know of his treating him after I came, about two years and a half.   Near that.

Q.   You may state, whether you know of a book he kept, in which he kept his accounts against McWhirter?

A.   Yes.   I knew him to keep the account in a little small book.

Q.   I will ask you to state, if this is the book, (handing witness a memorandum book).

A.   Yes.

Q.   I will ask you if you know of his keeping this account from day to day or frequently?

A.   Yes, sir, frequently.

Q.   I will ask you, if you know of this book containing the original entries of the account?

A.   Yes.

Q.   You may look at this book and state, if you know the account that is kept in it?

A.   Yes.

Q.   What is kept in it?

A.   McWhirter's account is kept in it.   I know it from the doctor's signature in there, and from two or three other little things.   I remember some cross marks.

Q.   You may state, who kept the account in that book?

A.   Dr. Martin.

Q.   Will you turn to the page in that book, where the account is kept?

A.   That is it, (indicating page).

Martin v. Scott.

Q. Mrs. Martin, did you testify as to whether your husband treated McWhirter professionally?

A. Yes, he did.

Q. Do you know when it was he treated him?

A. Yes.

Q. State whether you know, whether at the time he was treating him, he kept any account of what McWhirter owed him for his services?

A. Yes, sir.

Q. Was that account kept at the time of the treatment?

A. Yes, sir.

Q. Mrs. Martin, you say you have seen that book before?

A. Yes, sir.

Q. You may state what it was used for?

A. To keep McWhirter's account.

Q. Will you state to the jury who kept that account?

A. Dr. Martin.

Q. Do you know, whether he made the entries in that book?

A. Yes, sir.

Q. Do you know whether these entries were made at the time of the services? Do you know whether those entries in that book where made at or near the time the services were rendered?

A. Yes, sir.

Q. How was that, were they or not?

A. They were made, sometimes just after, sometimes just at the time.

Q. Were you personally aware of that fact?

A. Yes, sir.

Q. Will you state, whether or not you know, as to whether that book is the doctor's book of original entries of his accounts?

A. I know it to be a fact, this is the book the doctor kept McWhirter's account in.

Q. The question is, whether you know whether this is the doctor's book of original entries for those accounts?

A. Yes, sir.

Whereupon the plaintiff offered the account book in evidence. To which counsel for the defendant objected, and the objection was sustained by the court and the book excluded.

There can be no doubt of the correctness of the ruling of the court excluding the plaintiff as a witness in his own behalf, even for the purpose of proving his account book. The language of the statute [sec. 329, of the code of civil procedure] is quite unequivocal and is conclusive of that point. But we think that the book was sufficiently proved by Mrs. Martin and should have been permitted to go to the jury for what it was worth.

Sec. 346 of the code is as follows: "Books of account containing charges by one party against the other, made in the ordinary course of business, are receivable in evidence only under the following circumstances, subject to all just exceptions as to their credibility: *First.* The books must show a continuous dealing with persons generally, or several items of charges at different times against the other party, in the same book. *Second.* It must be shown by the party's oath, or otherwise, that they are his books of original entries. *Third.* It must be shown in like manner, that the charges were made at or near the time of the transaction therein entered, unless satisfactory reasons appear for not making such proof. *Fourth.* The charges must also be verified by the party or the clerk who made the entries, to the effect that they believe them just and true, or a sufficient reason must be given why the verification is not made."

In the case of *Bentlys admr. v. Hollenbeck,* Wright's (Ohio) Repts, 168, it was held, that when the intestate

who made the entries in the account book was dead and the book offered by his administrator, who made oath that they came to his hands as the genuine and only books of account of the deceased, that to the best of his knowledge and belief the entries were original and contemporaneous with the fact and the debt unpaid, with proof also of the party's handwriting, that the book was properly received in evidence. Where the party had since become insane his account book was admitted in evidence on proof of the fact and that the entries were in his handwriting with the supplementary oath of his guardian. *Holbrook v. Gay*, 6 Cush., 215. See also 1 Greenleaf on Ev., §§ 117 and 118 *and notes.*

While we recognize fully the authority of *Wamsly et al, v. Crook & Hall*, 3 Neb., 344, that case does not sustain the position of the defendants in this. While the law makes the living party equally silent with the dead one, it goes no further. While the one though dead may speak through his books of account, shall the other while living be deprived of the same means of vindicating his rights? The language of our statute above quoted seems to have been chosen with reference to all cases, where by reason of the death, or disability from any cause, of the party making the entries in the account books, to make the proper verification; and in all such cases it either dispenses with the verification, or lets in such as the nature of the case will admit. And under the circumstances of this case, the evidence of Mrs. Martin was sufficient verification of the plaintiff's account book, to render it admissible as evidence to the jury.

The next error assigned and deemed important to notice, is the permitting of the defendants to give in testimony to the jury, the register of bills receivable of the deceased. This book appears to have been introduced for the purpose of showing that at sometime pending the making of the account upon which the suit was brought,

the deceased, McWhirter, held in his bank a note of the plaintiff for $107.25, secured by chattel mortgage. The note register, or collection register, or as it is called in this case, the book of bills receivable, kept by a bank or banker, is not a "book of account," in the sense in which that term is used, either in the statute or at common law, as they do not contain "charges by one party against the other made in the ordinary course of business." And in no case are account books evidence of any transactions even between the parties other than goods, wares or merchandise, sold or delivered, and work, labor or services performed. But an equally fatal objection to the admission of this book in evidence is, that it does not tend in the remotest degree to disprove the claim of the plaintiff, nor have the facts, which it might be admitted to establish, the least bearing upon any point in issue in said case.

There are other assignments of error in the case, but as, for the reasons above given, there must be a new trial, it is not deemed important to discuss them.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.