Labaree v. Klosterman.

CHARLES K. LABAREE V. JOHN KLOSTERMAN ET AL.

[FILED OCTOBER 7, 1891.]

1. **Review:** MOTION FOR NEW TRIAL: THE ASSIGNMENT in a motion for a new trial, of errors of law occurring at the trial, is sufficient to entitle a party to review the rulings of the district court on the admission or rejection of testimony.

2. **Evidence:** COLLECTION REGISTERS or loan registers are inadmissible in evidence as books of account.

3. **Witnesses:** REFRESHING MEMORY. A witness may refresh his memory from a memorandum made at or near the time the transaction mentioned in it took place, even though the memorandum was not made by himself, if, after seeing it, he has a personal recollection of the facts therein stated, and can testify of them of his own recollection.

4. ———: ———. Such memorandum is admissible without the corroborating testimony of the person who made the same, if beyond the reach of the process of the court, his whereabouts being unknown, upon proof of his handwriting.

5. **Evidence:** ERROR CURED. Error cannot be predicated upon the exclusion of testimony, where it is subsequently received in evidence.

6. **Principal and Surety:** BOND GUARANTEEING PAYMENT OF NOTES. The firm of W. & W. gave a bond to L., with sureties, by the terms of which the sureties guaranteed the payment, thirty days after their maturity, of all notes secured by chattels or real estate, which W. & W. should sell to L. *Held*, That the sureties are not liable for the payment of any note transferred by their principals to the obligee in the bond, for a consideration other than money at the time paid or promised to be paid.

7. **Instructions:** NON-PREJUDICIAL ERROR. A verdict will not be set aside for the giving of an instruction uncalled for by the evidence, if not prejudicial to the rights of the party complaining.

8. ———: INFERENCE. When a material fact may be inferred from the testimony in a case, it is proper to submit such inference to the jury by instruction.

9. ———. *Held,* No reversible error in the charge of the court.

ERROR to the district court for Lancaster county. Tried below before APPELGET, J.

O. P. Mason, Robert Ryan, and F. W. Lewis, for plaintiff in error, cited: As to the admission of the collection register: Martin v. Scott, 12 Neb., 48; Masters v. Marsh, 19 Id., 466; Van Every v. Fitzgerald, 21 Id., 36; Pollard v. Turner, 22 Id., 366. As to the defense of usury: Green v. Kemp, 13 Mass., 515; Bridge v. Hubbard, 15 Id., 96, 103; French v. Shotwell, 5 Johns. Ch. [N. Y.], 555; Reading v. Weston, 7 Conn., 409; Loomis v. Eaton, 32 Id., 550; Baskins v. Calhoun, 45 Ala., 582; Fielder v. Varner, Id., 429; Williams v. Tilt, 36 N. Y., 319; Billington v. Wagoner, 33 Id., 31, 34; Post v. Bank, 7 Hill [N. Y.], 391; Stephens v. Muir, 8 Ind., 352; Cutchen v. Coleman, 13 Id., 568; Austin v. Chittenden, 33 Vt., 553; Ransom v. Hays, 39 Mo., 445; Draper v. Emerson, 22 Wis., 147.

Marquett, Deweese & Hall, and S. H. Steele, contra, cited, as to the admissibility of the collection register: Milligan v. Butcher, 23 Neb., 683; Volker v. Bank, 26 Id., 603. As to the motion for a new trial: Harvey v. Osborn, 55 Ind., 535; O., etc., R. Co. v. Hemberger, 43 Id., 462; Sherlock v. Alling, 44 Id., 184; Meek v. Keene, 47 Id., 77; Midland, etc., R. Co. v. McCartney, 1 Neb., 402; Cropsey v. Wiggenhorn, 3 Id., 117; Mills v. Miller, 2 Id., 317; Shaffer v. Maddox, 9 Id., 211; Tomer v. Densmore, 8 Id., 391; Cook v. Pickerell, 20 Id., 435. As to the instructions: O'Hara v. Wells, 14 Neb., 403; Bartling v. Behrends, 20 Id., 211; Campbell v. Holland, 22 Id., 607. As to the construction of the bond and liability of sureties for notes transferred on original consideration: Brandt, Suretyship & Guaranty, secs. 9, 79; 1 Benj., Sales, secs. 1, 2; Williamson v. Berry, 8 How. [U. S.], 544; 1 Parsons, Contracts [7th Ed.], sec. 2, p. 521; Huthmacher v. Harris,

38 Pa. St., 498; *Mackaness v. Long*, 85 Id., 158, 163; *Edwards v. Cottrell*, 43 Ia., 194, 204; *Wittkowsky v. Wasson*, 71 N. Car., 451; *Mitchell v. Gile*, 12 N. H., 390; *Vail v. Strong*, 10 Vt., 457; *Elwell v. Chamberlin*, 31 N. Y., 624; *Long v. Fuller*, 21 Wis., 123; *Shire v. Bank*, 70 Mo., 528; *Speigle v. Meredith*, 4 Bis. [U. S.], 123; Winfield, Adjudged Words & Phrases, 68; *Com'rs v. Davis*, 12 Bush [Ky.], 241; *Ernst v. Cummings*, 55 Cal., 179; *Bronson v. Noyes*, 7 Wend. [N. Y.], 188; *Magee v. Kast*, 49 Cal., 141; *Cook v. Bradley*, 7 Conn., 57; *Bean v. Burbank*, 16 Me., 458; *Brown v. Adams*, 1 Stewart [Ala.], 51; *People v. Shall*, 9 Cow. [N. Y.], 778; *Lees v. Whitcomb*, 2 Mo. & P. [Eng.], 86; *Sykes v. Dixon*, 9 A. & E. [Eng.], 693; *Bates v. Cort*, 3 Dow. & Ry. [Eng.] 676; *James v. Williams*, 5 B. & Ad., 1109; *Schermerhorn v. Vanderheyden*, 1 Johns. [N. Y.], 139; *Emery v. Chase*, 5 Greenl. [Me.], 232; *Howes v. Barker*, 3 Johns. [N. Y.], 506; *Veacock v. McCall*, Gilpin [U. S.], 329; *Cutter v. Reynolds*, 8 B. Mon. [Ky.], 596; *Mitchell v. Williamson*, 6 Md., 210; 2 Daniel, Neg. Inst. [3d Ed.], sec. 1316, 1318, 1319; *Proctor v. Keith*, 12 B. Mon. [Ky.], 252; *Overdeer v. Wiley*, 30 Ala., 709; *Jones v. Miller*, 12 Mo., 408; *Owen v. Stevens*, 78 Ill., 462; *Parmelee v. Thompson*, 45 N. Y., 58; *Peelman v. Peelman*, 4 Ind., 612; *Crowhurst v. Laverack*, 16 Eng. Law & Eq., 499; *Gibson v. Renne*, 19 Wend. [N. Y.], 389; *Miller v. Holbrook*, 1 Id., 317; *Stilk v. Myrick*, 2 Camp. [Eng.], 317; *Reynolds v. Nugent*, 25 Ind., 328; *McCarthy v. Bldg. Ass'n*, 61 Ia., 287; *Westhead v. Sproson*, 6 Hurl. & N. [Eng.], 728; *Morrell v. Cowan*, 6 L. R. Ch. Div. [Eng.], 166; *Boyd v. Moyle*, 2 C. B. [Eng.], 644.

NORVAL, J.

This suit was brought by the plaintiff in error against J. Robert Williams and W. H. Westover, as principals, and John Klosterman, Abel Hill, and Archibald F. Coon, as

, sureties, upon a certain bond given by the defendants to one Henry E. Lewis, of which the following is a copy:

" Know all men by these presents, that we, W. H. West-over and J. Robert Williams, of David City, Butler county, Nebraska, as principals, and Abel Hill, J. Klosterman, and A. F. Coon, as sureties, are held and firmly bound unto Henry E. Lewis, of Lincoln, Lancaster county, Nebraska, his heirs and assigns, in the sum of $10,000. For the payment of which, well and truly to be made, we jointly and severally bind ourselves, our heirs, our executors, and assigns, firmly by these presents. Given under our hands and seals this 15th day of November, A. D. 1883.

" The condition of this obligation is such, that whereas, the said W. H. Westover and J. Robert Williams are about to sell to said Henry E. Lewis within the next two years, promissory notes secured by chattel or real estate mortgages, and to indorse the said notes to the said Lewis, and have entered into an agreement as parties of the first part, with the said Lewis as party of the second part, for good and sufficient consideration therein expressed, to guarantee to said Lewis, and to his assigns, payment within thirty days after maturity of each and every one of the promissory notes so sold to said Lewis by them, and indorsed as aforesaid, with accrued interest, and to collect the said notes without expense or charge therefor to the said Lewis, or the assigns thereof, and to waive protest, demand, and notice of non-payment on each and every one of the notes so sold to the said Lewis by them, and have agreed with the said Lewis, if any of the said notes are not paid within thirty days after maturity, to forthwith pay such note or notes to the said Lewis, or his assigns, and to look to the maker or makers thereof for payment to them of the same, and have expressly stipulated that the said agreement shall be of the same force and effect between the said parties of the first part and the assignees of notes sold to said Lewis by said parties of the first part,

whether assigned with or without recourse, as between said parties of the first part and said Lewis himself:

"Now, therefore, if the said W. H. Westover and J. Robert Williams shall pay, or cause to be paid, to the said Henry E. Lewis, or his assigns, within thirty days after their maturity, each and every one of the said notes sold to the said Lewis, as aforesaid, with the interest thereon accrued, and shall faithfully perform all the above mentioned agreements, the above obligation to be void; otherwise to be and remain in full force and virtue.

"W. H. Westover.
"J. Robert Williams.
"Abel Hill.
"J. Klosterman.
"A. F. Coon.

"Sealed and signed in the presence of
"A. G. Wolfenbarger."

The plaintiff alleges, in effect, that said Westover and Williams sold to said Lewis notes against the following named parties and for the amounts named, to-wit:

| | |
|---|---:|
| E. F. Ruth | $308 40 |
| W. A. Baxter | 117 75 |
| S. S. McElvain | 105 87 |
| Charles E. Warren | 130 53 |
| Richard Duval | 186 95 |
| John Esch | 249 81 |
| A. S. Wright | 127 75 |
| J. W. Taylor | 118 90 |
| Charles H. Simpson | 633 17 |
| S. J. Herdman | 91 45 |
| Henry Draper | 46 00 |
| James Dowers | 85 90 |
| P. S. Gaskell | 54 00 |
| John Baker | 120 00 |
| John Bredwell | 120 35 |

That each of said notes, except the one made by Simpson, was indorsed " Pay to H. E. Lewis, or order, protest, demand, and notice of non-payment waived, Westover & Williams;" that said Lewis sold and assigned all of said notes to the plaintiff; that said notes are more than thirty days past due, and no part thereof has been paid, and that there is due thereon from the defendants to the plaintiff the sum of $2,098.37, with interest from November 1, 1885.

The defendants Hill, Coon, and Klosterman filed an answer, which consists of

First—A denial of each allegation of the petition not expressly admitted; admits the signing of the bond, but denies its delivery, and alleges that the bond was without consideration.

Second—Alleges that the bond was delivered to Lewis with the express understanding and agreement that said Lewis would furnish to said Westover & Williams five to ten thousand dollars more money to handle and loan on chattel mortgage security, which was the only thing that caused said bond to be executed and delivered; that Lewis never furnished any money whatever to loan.

Third—Denies that the notes described in the petition were sold by Westover & Williams to Lewis; that if Lewis paid any consideration for the notes, he got them by exchange for other notes or in payment of a debt claimed to be due him from Westover & Williams.

Fourth—That none of the notes mentioned in the petition were secured by mortgage.

Fifth—That the arrangement whereby the notes were acquired was simply a device to cover the exaction of usury.

Sixth—That the notes given by E. F. Ruth, S. S. McElvain, Charles E. Warren, John Bredwell, Richard Duval, John Esch, A. S. Wright, Jr., J. W. Taylor, S. J. Herdman, Henry Draper, James Dowers, P. S. Gaskill,

and John Baker were paid by the makers thereof and by
Westover & Williams. That the note of Charles H. Simp-
son was never in the hands of Westover & Williams, and
was never by Lewis bought from Westover & Williams;
that none of the notes were secured by mortgage; that the
notes of W. A. Baxter, S. S. McElvain, and H. S. Wright
Jr., were renewals of old notes held by Lewis, and that
Westover & Williams only acted as the agents of Lewis in
taking them.

The reply admits the payment of the Bredwell note;
denies all other averments of the answer, and alleges that
the renewal of the Simpson note was made with the writ-
ten consent of the defendants Klosterman and Coon; that
their liability should not be varied from what it had been
on the original note, if thereon liable.

A verdict was returned for Coon, Hill, and Klosterman,
and one in favor of the plaintiff and against Westover &
Williams.

Numerous rulings of the trial judge, on the admission or
exclusion of testimony, are assigned for error in this court.
The defendants in error contend that these rulings cannot
be reviewed, for the reason that the alleged errors were not
specifically pointed out in the motion for a new trial. The
third assignment in the motion is "For errors of law oc-
curring at the trial duly excepted to." This assignment
does not specifically point out the rulings complained of,
and in several cases reported in the earlier Nebraska Re-
ports, commencing with *M. P. Ry. Co. v. McCartney*, 1
Neb., 402, it has been held that such an assignment in a
motion for a new trial is too general to challenge the at-
tention of the trial court to its rulings on the admission or
rejection of testimony; and that the motion must specific-
ally point out the evidence admitted or excluded. But
these decisions are not applicable to the statute now in
force governing motions for new trials. It will be ob-
served that the assignment in the motion in this case is in

the language of the eighth, or last subdivision of section 314 of the Code, and is one of the grounds upon which a new trial may be granted.    While it is true this section was in force at the time the decisions referred to were made, yet the legislature subsequently, in 1881, amended section 317 of the Code by providing that it shall be sufficient, in assigning the grounds of the motion, to state the same in the language of the statute, and without further or other particularity.    It is evident that it is within the scope and meaning of the statute that all errors occurring during a trial, to be available in the supreme court, must be preserved by bill of exceptions, such as the rulings on the admission or rejection of testimony, are covered by the assignment of "errors of law occurring at the trial." This change in the statute, however, does not obviate the necessity of pointing out specifically, in the petition in error the particular rulings which are claimed to be erroneous.    The objection of the defendants in error to our reviewing the rulings of the court below, in admitting or rejecting evidence, must be overruled.

The first error assigned in the petition in error is that the court erred in not permitting Henry E. Lewis to testify as to the description of the note given by S. J. Herdman.    It appears that the Herdman and several of the other notes mentioned above had been sent to Westover & Williams for collection, and were not, at the time of the trial, in the possession of the plaintiff.    It appears, from page 33 of the bill of exceptions, that the court excluded the testimony of Lewis, giving a description of the Herdman note, on the ground that the witness stated that he was testifying from a memorandum recently made by his clerk from the witness's loan register, or from the petition filed in the case.    The record discloses that afterwards the court reconsidered its ruling and Mr. Lewis was permitted to testify fully as to the date of the note, amount, when due, and that it was indorsed in the usual way by J. Robert Will-

iams, and Westover & Williams. If there was any error in the first ruling, it was afterwards cured by admitting the testimony previously excluded.

The second assignment is "that the court erred in admitting in evidence the so-called note of James Dowers, to which was no signature." The objection to the introduction of the note was on the ground of incompetency. It was one of the notes mentioned in the petition which the defendants claim was paid. They called the maker of the note, who testified that he paid it to the firm of Westover & Williams; that it was by them delivered to him, and he tore off his signature. The note was clearly admissible as tending to show payment. But the record discloses that the plaintiff's objection to the admission of the note in evidence was sustained. The defendants are the only ones who were prejudiced by the ruling, and they are not complaining.

The third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh assignments present the same question as the admissibility of certain entries in the loan register and the collection register of Westover & Williams, with reference to the notes of Herdman, Baxter, McElvain, and Wright. Each of the notes the witness H. E. Lewis testified he had purchased of Westover & Williams during the time the bond was in force. Nelson Westover testified that he bought the Herdman note from Westover & Williams, and that he sold, indorsed, and transferred the same to Mr. Lewis. W. H. Westover gave testimony to the effect that the Herdman note was sold by his firm to Nelson Westover; that the firm afterwards received it back for collection from him, and not from Mr. Lewis. For the purpose of corroborating the testimony of the two Westovers, and to show that Mr. Lewis never received the note in question from Westover & Williams, entries in the loan and collection registers of that firm were received in evidence, over the objections and exceptions of the plaintiff.

With like objections and exceptions other entries contained in the same books were introduced to show that the Baxter, McElvain, and Wright notes, mentioned in the petition, were renewals of former notes made by the same parties and owned by Mr. Lewis.

The testimony was upon important issues involved in the case, upon which there was a sharp conflict in the evidence. It is obvious that if Lewis did not purchase these notes from Westover & Williams, the plaintiff could not recover therefor in this action. If the Herdman note was sold by the principals in the bond to Nelson Westover, and by him to Lewis, it could not have been purchased by Lewis of Westover & Williams, as he testified.

It is equally clear if Westover & Williams renewed any of the old notes sold by the firm of Roberts, Westover & Williams to Lewis, and such renewals, when turned over to Lewis, were indorsed by Westover & Williams, that the sureties are not liable for their payment. They never bound themselves to pay such notes. The extent of the undertaking of the sureties was to pay such secured notes as their principals should sell to Lewis if the same were not paid within thirty days after their maturity.

The material inquiry, therefore, is, were these books admissible in evidence under section 346 of the Civil Code? It provides that "Books of accounts, containing charges by one party against the other, made in the ordinary course of business, are receivable in evidence only under the following circumstances, subject to all just exceptions as to their credibility: First—The books must show a continuous dealing with persons generally, or several items of charges at different times against the other party in the same book. Second—It must be shown by the party's oath, or otherwise, that they are his books of original entries. Third —It must be shown in like manner that the charges were made at or near the time of the transaction therein entered, unless satisfactory reasons appear for not making such

proof. Fourth—The charges must also be verified by the party or the clerk who made the entries, to the effect that they believe them just and true, or a sufficient reason must be given why the verification is not made." Neither of the books contain charges against the plaintiff, Mr. Lewis, nor any one else. Each page contains several columns and numerous lines across the page. There is a heading at the top of each column to explain the entries therein. The heading is as follows: "No., Payer's Name, P. O. Address, Kind of Claim, Date of Instrument, Amount, Interest From, Due When, From Whom Received, Their Number, Original Payee's Name, When Received, To Whom We Remit, P. O. Address." The purpose of making the entries in these books, or registers, as they are called, was to keep track of collections received by the firm and loans made by it. Neither of the books received in evidence is a "book of account" within the meaning of the section quoted above.

The same question was decided adversely to the defendants in error in *Martin v. Scott*, 12 Neb., 42. The defendant offered in evidence the note register or bills receivable of the decedent's bank, which was admitted over the objection of the plaintiff. The court in the opinion says: "The note register, or collection register, or, as it is called in this case, the book of bills receivable, kept by a bank or banker, is not a 'book of account' in the sense in which that term is used, either in the statute or at common law, as they do not contain 'charges by one party against the other made in the ordinary course of business,' and in no case are account books evidence of any transactions even between the parties other than goods, wares, or merchandise sold or delivered, and work, labor, or services performed."

In *Van Every v. Fitzgerald*, 21 Neb., 36, it was held that a time book is not admissible as a book of account. It is evident that the loan register and collection register were used by Westover & Williams as a memoranda for their

own private use, and were not admissible in evidence as books of accounts.

But it is claimed that the books were competent as memoranda, and entitled to be received in evidence. The proof shows that most of the entries in the books were made by A. G. Wolfenbarger, who was the book-keeper of Westover & Williams; that he has not been in their employ since 1884, and his whereabouts is not known. It also appears that the entries were made at the time of the transactions to which they refer. The preliminary proof was sufficient. A witness may refresh his memory from a memorandum made at or about the time the transaction mentioned in it took place, even though not made by himself, if, after seeing it, he remembers the facts therein stated, and can testify to them of his own recollection. (1 Greenleaf, sec. 436 ; *Hill v. State*, 17 Wis., 697 ; *Riggs v. Weise*, 24 Id., 545.) Such memorandum is admissible without the corroborating testimony of the person who made the same, if beyond the reach of the process of the court, his whereabouts being unknown, upon proof of his handwriting. (*Chaffee v. U. S.*, 18 Wall. [U. S.], 516 ; *Vinal v. Gilman*, 21 W. Va., 301.) Under the proofs, as made, the books were properly received in evidence.

It is claimed that "the court erred in permitting Westover to testify that when he wrote Lewis 'to charge our account with the following collections,' that they had not at all times been either collected, renewed, or paid in cash." The evidence shows that some time prior to the giving of the bonds in suit the firm of Roberts, Westover & Williams had given Lewis a bond in the sum of $5,000 containing similar conditions to this. The firm transferred to Lewis several thousand dollars in notes, and guaranteed their payment. The firm was dissolved in the fall of 1883, Mr. Roberts retiring. Subsequently the bond declared on was given, and Lewis sent to Westover & Williams for collection several of the notes which had been

14

taken under the first bond, and charged them with the same. It is also undisputed that Mr. Lewis neither sent nor paid them any money after the last bond was given. It was the theory of the plaintiff that Westover & Williams had collected the notes placed in their hands for collection, or part of them, and that instead of remitting the money, it went to pay for the notes herein involved. For the purpose of showing that the notes sent by Lewis to Westover & Williams had been collected by them, and that he had money in their hands to pay for the notes in controversy, several letters written by the firm to Mr. Lewis were put in evidence. These letters stated "charge our account with the following notes," naming them. It was certainly competent to prove, at least, so far as the sureties were concerned, that, as a matter of fact, the notes had not been collected. It was solely by the collection of the notes sent to Westover & Williams that the plaintiff claims to have paid money for the notes in controversy. If but a part of the old notes were collected and the money thus collected was remitted to Mr. Lewis, as the defendants insist, then it is perfectly clear the sureties are not liable. If, however, any portion of the money collected on the old notes was retained by the firm in payment of notes indorsed by them to Mr. Lewis, the sureties would be bound for their payment the same as if the money had been sent to Westover & Williams expressly for the purpose of paying for the notes. Even if the language used in the letters referred to should be construed to mean that the notes therein mentioned had been collected, that would not estop the sureties from proving that the notes in fact had not been paid. Suppose Westover & Williams had admitted that all the notes sent them by Mr. Lewis had been collected, when not a dollar had been paid thereon, certainly the sureties would be allowed to prove the admission was untrue. There can be no doubt of it. If Lewis or the plaintiff was prejudiced by the statements in these letters, the sureties cannot be

holden therefor.  By their undertaking they guaranteed to Mr. Lewis and his assigns the payment of all notes which their principals should sell to Mr. Lewis; further than that they did not promise.  The testimony of W. H. Westover is to the effect that not to exceed $1,500 was collected by his firm for Mr. Lewis during the time this bond was in force, and that every dollar of it was remitted to him.  If this is true, of which the jury were the sole judges, Lewis paid no money for the notes in suit.  As to the Dowers note, mentioned in the petition, the testimony conclusively shows that it was paid to Westover & Williams while it was in their hands for collection.  Whether they remitted the money to Mr. Lewis is quite immaterial, as the sureties are not holden for moneys collected by Westover & Williams and not remitted.  There is in the record also testimony from which the conclusion can be properly drawn that some of the notes involved in this litigation were but renewals of notes owned by Mr. Lewis when the bonds declared on was given, and, as already stated, the sureties are not liable for the payment of such renewals. Of the remaining notes there is testimony tending to show that they were received by Lewis from Westover & Williams in exchange for notes owned by Mr. Lewis which had been taken by the firm of Roberts, Westover & Williams. The manner of doing the business was this: Mr. Lewis sent at different times to Westover & Williams several of the old firm notes, and charged them therewith.  Subsequently they sent to Mr. Lewis the notes in suit in place thereof, and he gave them credit for their face value less one-half per cent per month until their maturity.  The jury found that Mr. Lewis paid no money for the notes received from Westover & Williams, and the evidence, though conflicting, sustains the verdict.

It is urged that the court erred in allowing W. H. Westover to testify that the bond was given to obtain money to loan for Lewis on chattel security.  It was the theory of

the defense that the bond was given in order to obtain money to loan for Mr. Lewis; that it was delivered on that condition and as a device to evade the usury laws, and that Mr. Lewis failed to comply with the condition by failing to furnish any money. It is in evidence that the bond sued on was sent by Mr. Lewis to Westover & Williams with a request that they execute and return the same. Before it was executed Westover & Williams wrote Mr. Lewis the following letter:

"DAVID CITY, NEB., Dec. 19, 1883.

"*Henry E. Lewis, Lincoln, Neb.:* Do you intend to furnish us additional money to loan on chattels? Presume you do, as you have sent us bond for $10,000, our old one being for $5,000. If you do not, we do not care to execute a new bond for more than the old one, to-wit, $5,000; but if you wish to put some $4,000 to $5,000 more on chattels, of course we will execute the new bond. We have our bondsmen ready to sign. Saw them to-day. Please let us know by return mail so that we can either leave the bond at $10,000 or change it to $5,000.

"As soon as we hear from you we will execute bond and send in paper for November.

"Your friends, WESTOVER & WILLIAMS."

No reply to it was received, and subsequently the bond was sent by mail inclosed in the following letter:

"DAVID CITY, NEB., Jan. 1, 1884.

"*Henry E. Lewis, Esq.*—DEAR SIR: Inclosed find bond and contract duly executed. As you will perceive we have filed the bond for $10,000, and will expect at least $10,000 more money from you to handle, provided we do the business in a safe and satisfactory manner, which we propose to do, and which we are now prepared to do. We can place all the money you can let us have as fast as you can get it ready for us, and hope you can get some in a very short time, as the demand is now good and we can get a good rate. Yours truly, WESTOVER & WILLIAMS."

Counsel for plaintiff urges in his brief that it was immaterial what the object of Westover & Williams was in executing the bond, unless it is shown that Mr. Lewis in accepting it had the same object in view. That the purpose of Westover & Williams in delivering the bond was to secure money from Mr. Lewis to loan for him, is clearly stated in the two letters copied above, one written before the bond was executed, and the other transmitting it. Mr. Lewis was fully apprised by these letters of the object of Westover & Williams, and having accepted the bond with knowledge of such purpose, without objection, he took it subject to condition on which it was delivered. The testimony of the witness Westover objected to was competent as tending, in connection with other evidence, to prove the charge that the bond was taken as a cover to evade the usury laws. While most of the testimony offered by the defendants, on that branch of the case, was excluded from the jury by the trial court, there is some evidence in the record from which the inference could be drawn that the bond was taken as a device to enable Mr. Lewis to collect usury.

Complaint is made of other rulings of the court on the admission and rejection of testimony, which we do not consider of sufficient importance to be here reported. Suffice it to say, we have carefully examined and considered the same and find that the objections are without merit.

The remaining assignments of error relate to the giving of certain instructions, which we will now consider. The third instruction given at the request of the defendants is as follows:

"Before the plaintiff can recover against the bondsmen, Coon, Klosterman, and Hill, he must prove by a preponderance of the evidence that he either paid, or promised to pay, money for the notes involved in this suit. If they were paid for with anything else than money the bondsmen would not be liable."

By this instruction it was doubtless intended to submit to the jury the question whether Mr. Lewis paid or promised to pay money for the notes, instead of whether the plaintiff paid for the notes with money. The notes were indorsed to the plaintiff, and the producing of them at the trial was sufficient evidence of his ownership had there been no further proof on that subject. It is established by undisputed proof that the plaintiff, Labaree, paid Mr. Lewis money for the notes, so that under the evidence the jury could not have found that they were paid for with anything else. How plaintiff became the owner of the notes was not important, but rather did Westover & Williams sell them to Mr. Lewis and receive money in payment? There was no necessity for giving the instruction complained of, but we are unable to see how its giving could have in any manner prejudiced the plaintiff. Had there been any evidence before the jury which tended in the least degree to prove that plaintiff did not pay money for the notes, then the charge would have been prejudicial to the rights of the plaintiff. A verdict will not be set aside for the giving of an instruction uncalled for by the evidence, if not prejudicial. (*O'Hara v. Wells*, 14 Neb., 403.)

Error is assigned in the giving of the following instruction asked by the defendant:

"4. The jury are instructed that to sell property is to transfer it from one to another in consideration of a price paid or agreed to be paid in current money. A sale differs from a barter in this, that in a barter the consideration, instead of being in money, is paid in goods or merchandise susceptible of a valuation. If the jury find from the evidence that the transfer to Lewis by Westover & Williams of the notes in controversy was not made for money, then the same was not a sale under the meaning of that word in the bond, and if the transfer of said notes to Lewis was made for a consideration other than money,

that would be a barter for which the bondsmen of West-over & Williams would not be liable under their bond."

The court drew the proper distinction between barter and sale. If the notes were paid for in money it was a pur-chase and sale. If the consideration for the transfer of the notes to Lewis was other notes, then the transaction was an exchange or barter. (1 Benjamin on Sales, sec. 2; *Vail v. Strong*, 10 Vt., 459; *Elwell v. Chamberlin*, 31 N. Y., 624; *Long v. Fuller*, 21 Wis., 123; *Edwards v. Cottrell*, 43 Ia., 194.)

It is claimed by counsel for plaintiff that the instruction required that in each instance Lewis must have sent the money, or the transaction would not be covered by the bond. In this counsel are in error. If money belonging to Lewis was in the hands of Westover & Williams, aris-ing from the collection of notes he had previously sent them, at the time the notes in suit were transferred to Lewis, and the money was applied in payment of the notes so transferred, then it was a sale. It would be a cash trans-action. This was made plain to the jury by the second in-struction given at the request of the plaintiff. It stated that "If you find that H. E. Lewis, from the proceeds of other notes collected by Westover & Williams, authorized payments to be made for notes purchased of Westover & Williams, and that said Westover & Williams had suffi-cient, in amount of such proceeds, to make such payments when transfers of such notes were made to Lewis, if you find they were made, you are instructed that such pay-ments would, equally with actual remittances of money under the same circumstances, amount to payment for such notes."

It is obvious that the charge of the court fully and fairly submitted to the jury the plaintiff's theory of the case. It is a mistake to say that the jury was restricted to actual cash transaction. No such inference can be drawn from the instructions.

Objection is made to the defendant's sixth instruction, which reads:

" 6. If you find from the evidence, that Westover & Williams, in the transaction involved in this suit, in taking the notes introduced in evidence, and sending the same to the said Henry E. Lewis, were acting as the agents of the said Lewis, and that the contract and bond introduced in evidence, and the alleged sale of notes involved in this suit, was simply a device to evade the usury laws, then you are instructed that such transaction would not amount to a sale of the notes within the meaning of the bond sued on. But if you so find, you will find for the defendants Coon, Klosterman, and Hill."

Counsel for plaintiff contends that the instruction was inapplicable to the evidence introduced; in other words, that there is no proof that the relation of principal and agent existed between Mr. Lewis and Westover & Williams, or that the bond was given as a device to avoid the usury laws. There was sufficient evidence from which the jury might infer agency. The testimony of Mr. Lewis shows that Westover & Williams were his agents in the collection of the old Roberts, Westover & Williams notes. There is evidence tending to prove that part of the notes involved in this controversy were taken by Westover & Williams in renewal of the notes sent to them by Mr. Lewis for collection. In the taking of these renewals and sending them to Mr. Lewis, they were his agents. In addition to the two letters written by Westover & Williams, copies of which are given in this opinion, there is in the record a letter written by Mr. Lewis to Westover & Williams, under date of September 19, 1884, which contains this language: "Why do you not send that paper that your Mr. Williams said in the note left on my door last week, you had ready, and would send me the last of last week? There is a large amount of paper due me from you and I want it sent in. I wish to make no new

loans in your county, but wish all collections hereafter re-
mitted to me in cash.   I shall probably have an agent go
to your county in the course of a few days who will take
charge of all collections there, and all notes then uncol-
lected you can turn over to him for collection.   Until
then do not make any collections of notes not yet due,
except in cash, which remit to me as collected."

On August 26, 1884, Mr. Lewis sends Westover &
Williams several notes for collection, and in the letter
transmitting them, among other things, states, " before
sending any more I must have a report and notes for the
notes so long overdue."

W. H. Westover testified in answer to questions as fol-
lows:

Q. When these notes were sent to you what, if any of
them, were renewed during that time ?

A. Nearly all of them.

Q. State what, if any, knowledge Mr. Lewis had as to
what was being done with his notes, as they matured, by
you and Mr. Williams.

A. He knew all about it; he knew just exactly what we
were doing with those notes.

Q. In what respect?

A. He knew that we were renewing the most of them,
and but very little money was being collected.

Q. What, if any, objection did he make to that?

A. He never made any; that was a part of our arrange-
ment to keep the money out.

Q. What do you mean by arrangement?

A. Our understanding was, that was what we gave him
the bond for and made the contract with him for, we were
making our money out of the interest we got, and so was
he.

There was ample evidence to submit to the jury the
question of agency.   The proofs show that Mr. Lewis was
to receive eighteen per cent per annum.   From this fact,

if the jury found that in the transaction Westover & Williams were the agents of Mr. Lewis, and the notes were drawn in their names and indorsed to him, the jury might infer that the bond was given as a device to make it appear that the indorsements of the notes was a sale, for the purpose of evading the statute on usury. When a material fact may be inferred from the testimony in a case, it is proper to submit such inference to the jury. (*Marion v. State*, 20 Neb., 234.)

Objection is made to the eleventh instruction asked by the defendants, which is as follows:

·"11. If you find that any of the notes involved in this suit were taken by Westover & Williams from the makers thereof, simply in renewal of an old note of the same party which was held and owned by Henry E. Lewis, then, and in that case, the plaintiff would not be entitled to recover the amount of such renewal note."

The sureties were not liable for the payment of the old notes, nor did they undertake to pay any note taken by Westover & Williams in renewal of a note owned by Lewis, when the bond was given. Elaboration upon this point is unnecessary.

Complaint is made of this instruction:

"You are instructed that if you shall find from the evidence that Lewis did not buy the notes as alleged in the petition of plaintiff, and which are the subject-matter of this action, of Westover & Williams, subsequent to the execution and delivery of the bond in plaintiff's petition described, or if you shall find from the evidence that such notes, or any part, have been paid to Lewis, then you will find for the defendants as to such notes."

The criticism made upon this instruction is, that it gave the jury to understand that if a payment had been made on any note involved in this suit, they should find against the plaintiff as to such note. We do not think that the jury could have been misled by the language used. There

was no evidence that Westover & Williams had sent money to Lewis as a partial payment on any note.    The objection to the instruction is overruled.

No error has been pointed out prejudicial to the rights of the plaintiff.    The judgment is

AFFIRMED.

THE other judges concur.