F. W. FITCH, APPELLEE, V. EUCLID MARTIN, ADMINISTRATOR,
APPELLANT.

FILED JUNE 25, 1909.   No. 15,865.

1. **Evidence: COLLATERAL FACTS.** The relevancy of a collateral fact to
be used as the basis of legitimate argument is not to be de-
termined by the conclusiveness of the inferences it may afford
with reference to the litigated fact. If it tends in a reasonable
degree to elucidate the inquiry, it is relevant, but the exercise of
the trial court's discretion in excluding such evidence as too
remote will rarely be overruled.

2. **Trial: EVIDENCE.** Where counsel offer "each and every memoran-
dum shown" in several books concerning transactions covering
several years, unless all of the entries are competent and rele-
vant, they should be excluded if opposing counsel interpose a
proper objection.

3. **Evidence: EXPERTS.** If an expert witness testifies that, unless cer-
tain facts are known to him, his opinion upon the subject con-
cerning which he is about to testify will not be accurate, it is
not error to reject that opinion, where it affirmatively appears
that some of those facts are unknown to the witness.

REHEARING of case reported in 83 Neb. 124. *Rehearing
denied.*

PER CURIAM.

Each party to this record requested a reversal of the
judgment of the district court, and it was not thought
necessary to determine every question presented in their
respective briefs. Each party asks for a rehearing to the
end that alleged errors in our opinion may be corrected
and certain assignments and cross-assignments of error
considered.

1. Plaintiff suggests that we determine the admissi-
bility of the testimony of Walker, Clarkson, Bastedo,
Haller, Walcott and Judge Estelle concerning certain
transactions with Major wherein Fitch was not known.
Walker was a real estate broker. Clarkson represented
Major as his attorney when the latter was arrested on

a charge of embezzlement.   Judge Estelle was counsel
for the deceased in a lawsuit, and Haller represented
the defendant in said action.   Bastedo is a builder and
contractor, and constructed two houses in Omaha for
Major, and also knew about the transfer of stock in the
Delphine Mining Company to the deceased.   Walcott was
associated with said mining company as its attorney,
while Major was interested therein, and also appeared for
him in a lawsuit.   All of said transactions occurred dur-
ing the time plaintiff claims that he was employed by the
year as Major's attorney.

Plaintiff relies in some degree upon proof of continued
professional services for the deceased to establish an an-
nual renewal of the contract he claims to have made years
before with Major to serve him professionally for a stipu-
lated sum per annum.   The evidence upon the main issue
is not conclusive, and competent evidence of collateral
facts or circumstances reasonably tending to establish the
probability or improbability of the fact in issue, if not too
remote, is relevant.   *Farmers State Bank v. Yenney,* 73
Neb. 338; *Blomgren v. Anderson,* 48 Neb. 240.   It is
largely within the discretion of the trial court to say what
proof of collateral facts is or is not too remote in a par-
ticular case.   In *Stevenson v. Stewart,* 11 Pa. St. 307,
defendant asserted that his signature had been forged to
the bill in suit.   The plaintiff was the administrator of
the deceased payee.   It was held competent for plaintiff,
in rebuttal, to prove that about the date of the note defend-
ant had borrowed money from other persons.   Mr. Jus-
tice Bell reasons that the competency of a collateral fact
to be used as the basis of a legitimate argument is not to
be determined by the conclusiveness of the inference it
may furnish with reference to a litigated fact, but that,
if it tends in a slight degree to elucidate the inquiry, or
to reasonably assist in a determination probably founded
on truth, it should be received.   See, also, Gillet, Indirect
and Collateral Evidence, sec. 51.   It does not require
argument to demonstrate that, if Fitch were employed by

the year as Major's attorney, Major Clarkson, Judge Estelle and Mr. Walcott would not ordinarily, during that period, be attending to Major's litigation. Of course the inference would not be conclusive; the circumstances would be subject to explanation, and different minds might honestly draw diverse conclusions from the facts stated.

We are not inclined to substitute our judgment for that of the trial court in passing upon the relevancy of this collateral evidence. If the case were on trial before us, we would not receive the testimony of Mr. Haller, because it merely corroborates Judge Estelle upon an admitted fact. The transactions proved by Bastedo did not necessarily involve the services of a lawyer, and the testimony of that witness with propriety might be excluded. So much of Walker's testimony as did not refer to the examination of abstracts of title for Major, or contradict in some manner plaintiff's testimony with reference to the services he claims to have rendered the deceased with reference to specific tracts of land, might, with profit, be excluded. Upon the next trial of this case the evidence may assume such a form as to make relevant some of the evidence that now seems irrelevant, but sufficient has been said to guide the trial court in the disposition of this feature of the case.

2. It is urged that the question referred to in the second subdivision of the opinion was not answered by the witness. The opinion does not so state. The trial court did not sustain defendant's objections to the interrogatory. The question was not withdrawn, and the ruling referred to permitted the witness to answer subsequent questions on the assumption that the services testified to were performed for Major. Questions like the following were thereafter propounded: "You may now answer the original question with reference to lots in Credit Foncier addition," etc. The interrogatories referred back to the quoted question, and we remain of the opinion that error was committed in the examination of plaintiff.

It is argued that plaintiff had been cross-examined upon all of the entries in the memorandum books, which were received in evidence over defendant's objections. We have been unable to find any cross-examination with reference to the following entry in the 1894 memorandum: "Monday 17. Agreement with Major to reduce contract services to $400 per year to begin Jan. 1, '95." To the suggestion that defendant's counsel should have severed their objections so as to refer only to the entries concerning which plaintiff had not been cross-examined, it is sufficient to say that plaintiff's offer, although purporting to be several as to each item, was omnibus in character. Opposing counsel would have been compelled to check each item in several books purporting to record as many years' transactions, if they were to direct their objections specifically to the incompetent or irrelevant evidence included in the offer. The law does not place that burden upon the cross-examiner. It was the duty of plaintiff's counsel to include within his offer only competent evidence. If he did not, the objection should have been sustained. *Hidy v. Murray*, 101 Ia. 65; *Hamberg v. St. Paul Fire & Marine Ins. Co.*, 68 Minn. 335.

3. Defendant argues that the evidence does not justify instruction numbered 9, which, in substance, informs the jurors, that, if they find from the evidence that about August 17, 1896, Major indorsed his name on a certain note and delivered it to plaintiff to be applied on the claim in suit, the transaction would toll the statute of limitations. It is shown by the testimony of Karbach that some time preceding July, 1906, he heard a conversation in plaintiff's office between Fitch and Major concerning said note; that he noticed Major's name on the back of said instrument, which was thereafter transferred by plaintiff to Karbach's father for office rent, and later returned to Fitch as worthless. Plaintiff was familiar with Major's signature, and testified that it was written upon the back of the note. He did not say that he saw Major sign his name thereto, and his testimony was admissible. *Minnis*

*v. Abrams,* 105 Tenn. 662, 80 Am. St. Rep. 913. The note is credited under date of August 17, 1896, in Fitch's account against Major, and is charged back to the latter December 12, 1900. Mrs. Dunham also testified that she heard Fitch and Major talk about the note, and subsequent to August, 1896, saw the latter looking over Fitch's book account against him, and that he expressed satisfaction therewith. Counsel refer to facts and circumstances touching the credibility of plaintiff and Mrs. Dunham, but that argument is for the jury, and not this court, to consider. The instruction responded to the evidence, and is not erroneous.

Instruction numbered 11, with respect to the $50 credit, is correct, unless it is conceded that plaintiff and Mrs. Dunham are not to be believed. The jury, and not this court, should pass upon the credibility of the witnesses.

4. It is urged that the district court should have admitted a transcript of plaintiff's claim as it appeared in the county court, because by comparison with the petition herein it will be found that items are included in the petition that were not brought to the county court's attention. Reliance is placed on *Paxton v. State,* 60 Neb. 763, to support this assignment. In the cited case a suit had been instituted in Douglas county upon a bond of a former state treasurer and in Lancaster county a like suit was commenced upon another bond given by that official. The statements in the petition filed in Lancaster county amounted to an admission that part of the claim made in the Douglas county suit was unfounded, and hence it was held that the defendants in the last named case should have been permitted during the trial to introduce in evidence a certified copy of the petition filed in Lancaster county. Although there is an allegation in the petition in the instant case that the services plaintiff alleges he performed for Major were worth more than the sums charged therefor, the action did not proceed as one upon a *quantum meruit,* nor to recover separately for each item of said services, but to recover a judgment for services

alleged to have been performed during several years upon an employment to pay Fitch therefor by the year. Proof of services rendered was admitted to prove that something was actually done by plaintiff for Major, and for the purpose of raising the presumption that such employment continued according to alleged preceding arrangements between the parties for payment by the year for professional services. In view of the issues actually presented, there was but little probative value in the facts referred to, and the exclusion thereof was not, and their admission would not have been, prejudicial error to either party.

5. Defendant argues with much earnestness that we should determine whether the court erred in excluding the deposition of Ross, the chemist. It was shown by the witness's preliminary examination that he had taken a course in chemistry in the university of Pennsylvania, and had associated with, and worked under, a consulting chemist residing in Chicago, who gave his attention to legal and manufacturing interests. Ross had also studied, and had practical experience, with reference to determining from tests the age of handwriting, and whether or not dissimilar inks had been used in tracing different writings. It was shown that the witness had subjected entries on each page of the Major account in plaintiff's book to chemical tests, and had applied the same reagent to entries in corresponding years in the accounts in the same book against other people. The court refused to permit the witness to testify that in his opinion the entries for the various years in the Major account were all made with the same ink and at or about the same time, and that in some instances for corresponding years the entries in the other accounts in the same book were made with different ink. Defendant argues that the Major account was all prepared at the same time for the purpose of furnishing false evidence to bolster up plaintiff's claim, and that the testimony of Ross tends strongly to establish that fact.

It is stated by some writers that chemical tests fur-

nish infallible evidence of the identity or dissimilarity of
inks employed in tracing different writings.    Ames, For-
gery, p. 270.    Proof of this collateral fact, as compared
with the further one that the entries in other accounts
were made with different colored ink, in the discretion of
the court, was proper to go to the jury; but, if in the
court's opinion the evidence was too remote, or the proper
foundation as to the skill of the witness, or the conditions
surrounding the test, had not been shown, it was not error
to exclude it.    We are of opinion that sufficient founda-
tion was not proved to admit the witness's opinion as to
the age of the entries considered.    The witness's cross-
examination was before the court when it ruled on the
offers made, and it was advised therefrom that a heavy
stroke would fade sooner than a lighter one; that an entry
made with a corroded pen would differ from one inscribed
with a bright instrument; writings exposed to the light
would fade much more rapidly than those contained in a
closed book; and that the witness could not arrive at a
satisfactory and an accurate conclusion unless he had
knowledge of all of the facts tending to preserve or deteri-
orate the writings.    None of the aforesaid facts were
shown.    Mr. Ames, in his work on Forgery, pp. 265, 267,
states that it is impossible to determine with accuracy the
age of writings by chemical tests.    That one may deter-
mine approximately, "but to tell by the ink which of two
writings is the older, when one is but two months and the
other two years, is, as a rule, impossible."

Counsel for defendant request us to determine assign-
ments numbered 132, 133 and 134 in their petition in
error.    They relate to the testimony of plaintiff identify-
ing his collection register and the entries therein.    It
became material during the trial to establish the dates
upon which plaintiff received money on a judgment
recovered by Larimore against Mickel Brothers.    Plaintiff
was attorney for Larimore, and the evidence developed
a claim that Major was surety for costs and owned the
judgment in that case.    The collection register exhibits

a history of said litigation and the dates that payments were made on the judgment. All of the entries in said register, save and except those referring to Major, could be lawfully identified by plaintiff, and, if relevant, be received in evidence. *Labarae v. Klosterman,* 33 Neb. 150. The record gives some countenance to the thought that counsel construe the opinion filed in this case in 74 Neb. 538, to hold that an interested witness in his suit against the representative of a deceased person may testify to facts we held he was incompetent to testify to in *Martin v. Scott,* 12 Neb. 42. No such construction should be placed on Judge Letton's opinion. We still adhere to the principles of law stated in *Martin v. Scott, supra.*

Having disposed of those assignments counsel insist should be determined, the motions for a rehearing are

OVERRULED.